**In re Michael A. DELAUDER, Debtor.**

**Bankruptcy No. 95–13005–AM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 28, 1995.

Gerald M. O'Donnell, Chapter 13 Trustee, Alexandria, VA.

Joseph Goldberg, Woodbridge, VA, for debtor.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

A hearing was held on October 10, 1995, on the trustee's objection to confirmation of the debtor's chapter 13 plan. The issue is whether the debtor may directly pay an undersecured automobile loan in full outside the plan when unsecured creditors are being compromised at 25%. The trustee objects that such disparate treatment violates § 1322(b)(1), Bankruptcy Code, by discriminating unfairly between claims. Not surprisingly, the creditor in question, Hyundai Motor Finance Company, does not object to this

separate classification.[1] No other objections have been filed. Although the trustee's objection and the parties' argument focused on the issue of unfair discrimination, the court noted at the hearing that, since the debtor's final payment to Hyundai is due after the last payment under the chapter 13 plan, the treatment of Hyundai's claim might independently pass muster under § 1322(b)(5), Bankruptcy Code, relating to "long-term" debt. It was to consider this issue, as well as to review the authorities cited by the trustee, that the court took the matter under advisement. For the reasons stated herein, the court concludes that the debtor's plan properly treats the Hyundai claim as a long-term debt under § 1322(b)(5), Bankruptcy Code, and the court will confirm the plan.

*Facts*

The debtor, Michael A. Delauder, filed a chapter 13 petition in this court on July 10, 1995. His plan, which is dated July 7, 1995, was filed the following day. His schedules reflect $112,470.14 in assets. His primary asset is a $95,000.00 house owned jointly with his father. His total liabilities are $136,556.11, of which three are secured debts. The first is to Hyundai Motor Finance Company, which has a lien on a 1994 Hyundai Excel.[2] Although the debtor listed Hyundai's claim as $9,679.39, Hyundai's proof of claim is for the slightly lesser amount of $9,457.52. Because the debtor lists the N.A.D.A. "Blue Book" fair market value of the car as $8,075.00, $1,382.52 of the claim is unsecured. The debtor is current on his car payments. The other two secured claims are the deed of trust against the house and a small loan against a thrift savings plan. There are no creditors holding unsecured priority claims. The balance of the debtor's liabilities—approximately $25,000—is unsecured. These debts arise mainly from consumer credit purchases.

Mr. Delauder's schedules show a gross monthly income of $3,104.40 earned as a packaging specialist with the Department of State. Less payroll deductions, his total monthly take home pay is $2,172.78. Additionally, Mr. Delauder rents out a room in his house for $250.00 per month, slightly augmenting his net monthly income to $2,422.78. His current monthly expenditures total $2,218.00. Among these expenditures are his mortgage payments ($913.00), transportation for commuting to work ($190.00), auto insurance ($70.00), and auto installment payments ($238.00). The excess of monthly income over expenses is $204.00.

The debtor proposes to pay $200.00 per month to the trustee for 36 months. The total amount to be paid into the plan is $7,200.00. Out of this, the chapter 13 trustee is to be paid 10 percent of all sums disbursed and the debtor's attorney is to be paid the $500.00 balance of his $1,200.00 fee. The debtor proposes to pay unsecured creditors 25 percent of their claims. The plan recites further that, if the debtor's estate were liquidated under chapter 7, the dividend to unsecured creditors would be 0 percent. All three of the secured claims—none of which are in arrears—are to be paid by the debtor outside the plan.

The trustee does not object to the payment of the mortgage or the thrift saving plan debt outside the plan. He does, however, vigorously object to the payment of Hyundai's claim outside the plan. The thrust of his objection is that the plan pays 100 percent of the unsecured portion of the Hyundai claim, with interest, directly to Hyundai, while the rest of the unsecured creditors, who are to be paid through the plan, will receive only 25 percent of their allowed claims (without interest).

Although no evidence was presented by the debtor at the hearing, the debtor's attorney proffered that the reason for the special treatment of Hyundai's claim is that the plan is "tight" and potentially could "crater" if the

---

1. In fact, the proof of claim filed by Hyundai states, in the box where the total amount of the claim is indicated, "$9,457.52 * * * PER PLAN, HFMC TO BE PAID DIRECT OUTSIDE PLAN." [emphasis in original]

2. The installment purchase contract, a copy of which is attached to Hyundai's proof of claim, requires the debtor to make payments of $237.92 per month for 60 months commencing June 1, 1994. The final payment would therefore be due May 1, 1999.

debtor's tenant were to leave. If the unsecured portion of the car debt were being paid through the plan, the Hyundai loan would then be in default and the debtor could lose his car, which he needs to get to work, and without which he could not keep his job.

At oral argument, the debtor's attorney indicated that the debtor would be willing to pay an additional $22.50 into the plan per month, which he represented would increase the distribution to unsecured creditors to 27 percent. Debtor's counsel argued that such increase would "even out" the payments to the unsecured class. In other words, it was argued, even if the Hyundai claim were bifurcated into its secured and unsecured components, and both components paid through the plan, and the debtor's payment into the plan augmented by the amount which the debtor had proposed to pay to Hyundai directly, the resulting dividend to general unsecured creditors would be 27 percent.[3] Therefore, the argument goes, simply increasing the payment to the unsecured creditors to that amount would make the unsecured class "whole" by not making them any worse off than they would have been without the separate classification. No evidence was presented as to where the additional $22.50 per month would come from. As noted above, the debtor's monthly expenses and the current proposed plan payment of $200.00 per month leave only a $4.00 per month cushion, and even that modest amount is problematical if, as represented by the debtor's attorney, there is a risk of losing the $250.00 per month in rental income.

*Discussion*

[redacted] The purpose behind chapter 13 is to enable an individual debtor to develop a workable plan for the repayment of his debts. As a matter of law, the bankruptcy court must confirm a chapter 13 plan if it meets all of the requirements of section 1325(a).[4] This plan and the trustee's objection raise several important questions as to whether those requirements have been met.

A.

[redacted] The trustee maintains that, in general, all debts should be provided for and paid within the chapter 13 plan unless there is a showing of "substantial cause" as to why the claim should be paid directly. *Foster v. Heitkamp (In the Matter of Foster),* 670 F.2d 478 (5th Cir.1982). In the somewhat rare instance of a *fully* secured automobile loan, the trustee concedes that cause *may* exist to separately classify the debt and permit the debtor to pay it directly. *Friendly Finance Discount Corporation v. Bradley (In re Bradley),* 705 F.2d 1409 (5th Cir.1983). However, the more frequent situation—as the court is faced with here—is one where the debt *exceeds* the value of the automobile. In this event, the creditor is secured to the extent of the value of his collateral and unsecured as to the balance.[5]

3. The court is unable to reproduce the debtor's calculation. Indeed, as noted below, the court's own calculations reflect that including the Hyundai claim in the plan would actually *reduce* the payment to unsecured creditors unless the plan term were lengthened.

4. 11 U.S.C. § 1325(a) provides: "Except as provided in subsection (b), the court shall confirm a plan if—(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title; (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid; (3) the plan has been proposed in good faith and not by any means forbidden by law; (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; (5) with respect to each allowed secured claim provided for by the plan—(a) the holder of such claim has accepted the plan; (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder; and (6) the debtor will be able to make all payments under the plan and to comply with the plan."

5. *See,* § 506(a), Bankruptcy Code: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

Consequently, the trustee's argument is two-fold. First, the difference in percentage payout between similarly situated unsecured creditors discriminates unfairly in violation of § 1322(b)(1). Second, in a situation where the claim is undersecured, the Bankruptcy Code mandates that the claim be provided for, and paid, within the plan so as to not impermissibly "prefer" one creditor over another.

#### B.

Section 1322(b)(1), Bankruptcy Code, permits a chapter 13 plan to "designate a class or classes of unsecured claims," but requires that the plan "not discriminate unfairly against any class so designated." The debtor's plan, while not formally "designating" the unsecured portion of Hyundai's claim as a separate class, silently treats it as such by providing for its payment in full, with interest, outside the plan as part of the regular car payment. Clearly, the plan discriminates in favor of Hyundai. Whether such discrimination is unfair requires further analysis.

Early cases attempting to derive a rule for determining what kind of discrimination would be considered unfair looked to whether there was a "rational" reason for the separate treatment. As a result, each case tended to be decided subjectively on its own facts and no clear rule of law developed. *See, In re Fizer,* 1 B.R. 400 (Bankr.S.D.Ohio 1979) (no "rational basis" for a plan which paid 100 percent to one class and nothing to other classes; confirmation denied); *In re Curtis,* 2 B.R. 43 (Bankr.W.D.Mo.1979) (rational basis found for plan which paid 100 percent on child support claim and 10 percent on other unsecured claims; confirmation granted); *In re Tatum,* 1 B.R. 445 (Bankr.S.D.Ohio 1979) (No rational justification found for a plan which paid some claims outside the plan even though all allowed claims were to be paid in full); *In re Weeden,* 7 B.R. 106 (Bankr.D.R.I.

1980) ("sufficient justification" not shown to permit confirmation of 100 percent plan which proposed to pay debt owed to debtor's sister outside plan).

In light of these divergent opinions, later cases began to consider more than the "rationality" of the debtor's classifications. The courts instead began to look at practical considerations such as the importance of the classification to the debtor's rehabilitation. Additionally, the courts evaluated whether the debtor acted in "good faith" in setting up the separate classification. *In re Moore,* 31 B.R. 12 (Bankr.D.S.C.1983).

■ A number of tests have emerged to aid in assessing whether a classification discriminates unfairly under § 1322(b)(1), and, thus, whether separate classification should be disallowed. This court finds the five-part test articulated in *In re Husted,* 142 B.R. 72 (Bankr.W.D.N.Y.1992) to be particularly useful. In *Husted,* the court, in determining that a plan did not "discriminate unfairly" by proposing to pay the debtor's obligation for past-due child support in full, while paying only 25 percent on other unsecured claims, set forth the following test: [6]

1. Whether there is a rational basis for the classification;

2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;

3. Whether the discriminatory classification is proposed in good faith;

4. Whether there is a meaningful payment to the class discriminated against;

5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

---

**6.** The particular discrimination addressed in *Husted* is not an issue for cases filed subsequent to October 22, 1994, the effective date of the Bankruptcy Reform Act of 1994, P.L. 103–394, 108 Stat. 4106 (1994). Under the amendments made by the Reform Act to § 507, Bankruptcy Code, pre-petition spousal and child support is now a priority claim. Under § 1322(a)(2), a chapter 13 plan must "provide for the full pay-

ment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." Accordingly, it would not be necessary today for a court, faced with a plan that paid past-due child support in full but compromised general unsecured claims, to engage in a "fairness" analysis.

The debtor bears the burden of showing that the proposed classification does not discriminate unfairly. *Moore, supra.* While the *Husted* factors are helpful, they do not constitute bright-line standards. Accordingly, the court must conduct a flexible case-by-case analysis in determining whether a plan discriminates unfairly and must consider all pertinent factors. *In re Bowles,* 48 B.R. 502, 507 (Bankr.E.D.Va.1985) (Shelley, J.).

### C.

■ One such factor is whether the disparate treatment is specifically authorized by some other provision of the Bankruptcy Code. In particular, the question that arises in the present case is whether the long-term debt exception of § 1322(b)(5), Bankruptcy Code, authorizes the debtor's proposed treatment of the Hyundai claim. Specifically, § 1322(b)(5) allows a plan to "provide for the curing of any default within a reasonable time and *maintenance of payments while the case is pending* on *any* unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due" (emphasis added). A long-term debt dealt with under § 1322(b)(5) is excepted from the discharge granted under § 1328 and, where the debt is secured, the creditor's lien remains intact. In the present case, the debtor's plan proposes payments of $200.00 per month for 36 months commencing August 1995. The last payment under the plan is therefore due in July 1998, while the last payment due under the installment sales contract with Hyundai, as noted above, is May 1, 1999.

■ Although the most common use of § 1322(b)(5) has been to cure mortgage or student loan defaults,[7] the language of the statute is by no means restricted to such debts. As noted by Collier, "[§ 1322(b)(5) ] permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period . . . and

may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan. The right to cure defaults on long term contracts applies to *all* long term debt." 2 King, Collier on Bankruptcy, ¶ 1322.09, p. 1322–27 (15th ed.). Additionally, as Judge Shelley of this district has noted, "Because § 1322(b)(5) authorizes the debtors' plan to cure any default and maintain payments on any secured or unsecured claim, it is evident that the debtors' plan may provide for the maintenance of payments to *undersecured* creditors as well as fully secured creditors whenever the last payment date under the note matures after consummation of the plan." *In re Bradley,* 109 B.R. 182, 184 (Bankr.E.D.Va.1990) (emphasis added). Accordingly, although the court has not found any reported case that permitted an automobile loan to be treated as a long-term debt under § 1322(b)(5), the court can discern no reason in principle why such treatment would be improper. Likewise, notwithstanding the reference in § 1322(b)(5) to the "curing of any default," nothing in the statutory language suggests that the provision is restricted to circumstances where there is an existing default, and the court concludes that the provision permits the "maintenance of payments while the case is pending" on any debt where the final payment is due after the last payment under the plan even in the absence of default.

### D.

At least one recent court has ruled that it is unnecessary to analyze the factors set forth in *Husted* and similar cases when "§ 1322(b)(5) prevents a finding of unfair discrimination . . . as a matter of law," *In re Cox,* 186 B.R. 744 (Bankr.N.D.Fla.1995). However, since other cases (presenting different facts) will arise where debtors seek to pay automobile loans outside the plan, the court believes that an analysis of the *Husted*

7. *In re Benner,* 156 B.R. 631, 632 (Bankr. D.Minn.1993), citing *In re Bradley,* 109 B.R. 182 (Bankr.E.D.Va.1990). The *Benner* court, in deciding that student loan repayment fell within § 1322(b)(5), reasoned that "since student loan debt and marital dissolution obligations are the only significant type of long-term debt carried by chapter 13 debtors, § 1322(b)(5) would be rendered largely ineffective with respect to unsecured debt if student loans could not be treated thereunder solely because the creditor would receive better treatment than other nonpriority unsecured creditors." *Id.* at 633.

factors will be helpful even in the present case.

The debtor's plan treats Hyundai's claim more favorably in two concrete respects. First, Hyundai will receive a greater percentage payment on account of its unsecured claim than do other unsecured creditors. Second, both the secured and unsecured portions of Hyundai's claim will be paid directly by the debtor, while other unsecured creditors must wait for disbursement by the trustee.

■ With respect to the first *Husted* factor—the rationality of the different treatment—the court notes that the most common reason accepted by courts for permitting separate classification is that such classification will aid the debtor's rehabilitation. *In re Bradley, supra,* at 184, citing *In re Terry,* 78 B.R. 171, 173 (Bankr.E.D.Tenn.1987) (the best reason for allowing some claims to be paid more than pro rata is to improve the debtor's rehabilitation); *In re Freshley,* 69 B.R. 96, 98 (Bankr.N.D.Ga.1987) (facilitating debtor's rehabilitation is one justification for discrimination). In the matter at hand, the debtor has presented no evidence showing that payment of Hyundai's unsecured claim in full will facilitate or improve his rehabilitation. Instead, he merely argues that because his future income, and hence his ability to make all the payments required under his plan, is uncertain, and because he needs his car in order to commute to work and maintain his employment, he is better off paying the debt—which is not currently in default—outside the plan. That way, if financial disaster befalls, he can convert to chapter 7 and, since the car loan would presumably be current, simply continue making payments. This justification, though not without its logic, is not one which, standing alone, the court considers persuasive, if only for policy reasons. That is, a justification grounded on the proposed plan's potential for failure rather than its likelihood of success is not one which promotes the debtor's rehabilitation.

■ The second factor—whether the classification is necessary to the debtor's plan—has also been stated in the converse: whether the debtor can carry out the plan without treating the challenged claim differently. *In re Benner,* 156 B.R. 631 (Bankr. D.Minn.1993), citing *Mickelson v. Leser (In re Leser),* 939 F.2d 669, 672 (8th Cir.1991). Here, there is no evidence that the debtor could not carry out a plan which paid both the secured and unsecured portion of Hyundai's claim through the plan. Indeed, the debtor's argument that such treatment would only increase the payout on unsecured claims (the class of which would include at that point the unsecured portion of Hyundai's claim) from 25% to 27% implicitly acknowledges that such treatment is *feasible.* While it may therefore be more *convenient* (and give the debtor more peace of mind) to pay the Hyundai claim directly, the court cannot find that such treatment is necessary in order for the plan to succeed.

■ In evaluating the third factor—whether the debtor is acting in good faith in proposing the classification—a number of courts have considered, as a component of "good faith," whether the debtor's goal in proposing the classification is simply to avoid the trustee's commission on distributions. *First Bank & Trust v. Gross (In re Reid),* 179 B.R. 504 (E.D.Tex.1995). In *Reid,* the court noted: "The motivation ... appears to be to avoid the payment of the trustee's fee. In analogous cases, other courts refused to allow debtors to make periodic payments directly to secured creditors simply to avoid payment of the trustee's fee and circumvent the bankruptcy game." *Id.* at 508, citing *In re Genereux,* 137 B.R. 411, 413 (Bankr. W.D.Wash.1992) and *Matter of Harris,* 107 B.R. 204, 206–7 (Bankr.D.Neb.1989). In the present case, while the debtor concedes that direct payment of the Hyundai claim would reduce the trustee's fee, there is no indication that the debtor's ultimate goal-in-disguise was to avoid such fees. Accordingly, the court cannot find that the debtor lacks the requisite good faith.[8]

8. In this case, the chapter 13 trustee has not specifically asserted, as a basis for objecting to confirmation, that the plan improperly seeks to avoid payment of the chapter 13 trustee's statuto-ry commission on distribution to creditors. Ordinarily, this court would find that direct payment of a claim outside the plan to avoid payment of the trustee's commission is not permitted

The fourth factor asks whether there is a "meaningful" distribution to unsecured creditors. The court in *Husted* considered "meaningful" to mean "greater than would be received in a chapter 7 liquidation." 142 B.R. at 74. In the present case, the proposed 25 percent distribution to unsecured creditors—the class being discriminated against—is significantly more than the zero percent they would receive in a chapter 7 liquidation. Accordingly, the court concludes that the distribution, whether viewed as a percentage or in absolute dollars, is meaningful.

The fifth factor—the difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification—militates in this case *against* a finding of unfair discrimination. Currently the plan makes available approximately $6,045.55 for unsecured creditors.[9] Since the unsecured claims scheduled by the debtor total $24,955.73, the payout to unsecured creditors would therefore be 24.2%. If the debtor were to pay Hyundai's claim inside the plan, an additional $237.92 per month (the amount of the monthly car payment) would become available to fund the plan. Over 36 months this would increase the funding of the plan by $8,565.12, for a total of $15,765.12. However, the secured portion of Hyundai's claim would then have to be paid in full with interest within the plan. Assuming the contract interest rate of 7.7% as the appropriate rate, amortizing the $8,075.00 secured portion of Hyundai's claim

over 36 months would require payments of $251.93 per month, or a total of $9,069.48. After paying this, plus the $500.00 priority attorney's fee claim and the chapter 13 trustee's commission of $1,422.19, the amount available to pay unsecured claims would be only $4,773.45, or *less* than is available under the proposed plan. The unsecured claims would be augmented by the unsecured portion of Hyundai's claim, bringing the total to $26,338.25. Accordingly, the total payout on unsecured claims would be only $4,773.45 divided by $26,338.25, or 18.1%.[10] Of course, this payout could be increased (1) by extending the plan payments beyond 36 months, and (2) by amortizing and paying the secured portion of Hyundai's claim over a shorter period, since the shorter the payment period, the less the *total* payments even though the *monthly* payment amount is higher. Indeed, simply extending the plan period to 46 months (the period through which the car loan now runs) would apparently result in a payout of 32% on unsecured claims. The reason general unsecured creditors would be worse off if Hyundai's claim were paid inside a 36 month plan is that the unsecured portion of Hyundai's claim is a relatively small portion of the total claim, the long payout period results in a lower monthly payment on account of the car loan, and a significant portion of the car loan is being paid beyond the termination of the plan and therefore does not compete with the claims being paid under the plan.

in a chapter 13 case. While the court recognizes that the trustee's commission on distributions is sometimes a significant tax on a debtor's ability to repay his debts, the court also recognizes that the chapter 13 trustee is not merely a disbursing agent. Chapter 13 trustees perform valuable services both for the debtor and the creditors by assisting debtors in proposing plans, objecting to improper claims, providing on-going advice to the debtor during the life of the plan, responding to requests for plan modifications or requests for temporary suspension of payments when debtors experience financial difficulties, and responding to creditor inquiries. Even where a claim, such as Hyundai's, is being paid directly outside the plan, if the debtor were to fall behind in payments, most likely the first person the creditor would contact would be the chapter 13 trustee.

If the matter could not be worked out, and the creditor filed a motion for relief from the automatic stay or to dismiss the chapter 13 case, the chapter 13 trustee would become involved at least to the extent of having to file pleadings in response. Accordingly, since the trustee is not, as a practical matter, insulated from responsibility even for a claim being paid outside the plan, it is unfair for the trustee not to be compensated for such responsibility.

9. That is, the $7,200 paid into the plan minus the $500.00 priority attorney's fee claim and the chapter 13 trustee's commission of $654.54, calculated as 10% of the sums disbursed.

10. These computations are shown in tabular form as Exhibit A to this memorandum opinion.

**E.**

Separate from the issue of the percentage amount being paid on account of Hyundai's unsecured claim is the provision for direct payment of the claim. As an initial matter, the court has found no cases permitting a debtor to pay an undersecured debt in full outside the plan. The trustee asserts that such treatment discriminates unfairly and is *per se* impermissible. For this proposition, the trustee relies primarily on the decision in *In re Blevins,* 1 B.R. 442 (Bankr.S.D.Ohio 1979). In *Blevins,* the court held that a debtor could not elect to pay, in full, a partially secured creditor outside the plan. In so holding, Judge Sidman opined, "All claims should, and perhaps must, be treated within the terms of a proposed plan, unless substantial justification is provided for exclusion of a claim for the plan provisions." *Id.* at 444. He further noted, "If the spirit and letter of the provisions of Chapter 13 are to be followed, that is, that all similarly-situated creditors be given equal treatment, then the principle of fairness in the classification of claims must apply to all classification of claims chosen by the debtor." *Id.* Despite this seemingly absolute statement of law, Judge Sidman, while reaching the same conclusion, applied a slightly different rationale in *In re Tatum,* 1 B.R. 445 (Bankr.S.D.Ohio 1979), a companion case to *In re Blevins.* In *Tatum,* a case that also focused on a proposal to pay the unsecured portion of a secured debt outside the plan, the court unequivocally stated that the classification of claims is subject to a test of fairness and that "[N]o *rational justification* has been advanced by this debtor as to why certain unsecured claims should be outside the ambit of the Chapter 13 plan, and others should be inside." *In re Tatum,* 1 B.R. at 446 (emphasis added). Essentially, Judge Sidman seems to suggest that such classification could be permissible if the requisite rational justification is shown. Similarly, the court in *In re Weeden,* 7 B.R. 106 (Bankr.D.R.I.1980) determined that "sufficient justification" for treating one unsecured creditor differently than the others was not been shown in a case where the debtor proposed a 100%–payment to all creditors, but proposed to pay a debt to the debtor's sister outside the plan.

It is not uncommon in chapter 13 cases to provide for the regular payments on a secured long term debt, particularly a home mortgage, to be paid outside the plan while the payments to cure a pre-petition arrearage are made through the plan. In the case presently before the court, there is no arrearage claim, since the debtor's payments were current on the date he filed his chapter 13 petition. However, the last payment on the loan, if paid according to its contractual terms, comes due after the last payment under the plan. As noted above, the payment of the loan according to its original terms increases the funds available for unsecured creditors over the 3–year life of the plan and appears to be in the best interest of creditors. While Hyundai clearly benefits from being paid directly according to the original terms of the loan, it does not appear that such treatment adversely impacts either the amount or timing of the dividend to be received by the unsecured creditors.

Accordingly, although this court would not, as a routine matter, permit an undersecured automobile loan to be paid directly by a debtor outside the plan, such treatment is not improper in this case. Here, the last payment on the automobile loan is due after the last payment under the plan, the direct payment does not reduce the dividend to unsecured creditors and does not appear to be motivated primarily by a desire to avoid the trustee's commission, and the plan otherwise complies with all the requirements for confirmation. For these reasons, the court cannot find that the plan unfairly discriminates against general unsecured creditors, and the objection to confirmation will therefore be overruled.

A separate order will issue confirming the debtor's chapter 13 plan.

Exhibit A

**Delauder Chapter 13 Plan Analysis**

*Proposed Plan*

| | Months | Amount | Total |
|---|---|---|---|
| Plan Payments | 36 | $200.00 | $7,200.00 |
| Total Into Plan | | | $7,200.00 |
| | | | |
| Priority atty fees | | | $500.00 |
| Trustee's commission | | | $654.54 |
| Available for unsecured | | | $6,045.46 |
| | | | |
| Total unsecured | | | $24,955.73 |
| | | | |
| % payout on unsecured | | | 24.2% |

*If Modified*

| | Months | Amount | Total |
|---|---|---|---|
| Budget Payments | 36 | $200.00 | $7,200.00 |
| Car Payments | 36 | $237.92 | $8,565.12 |
| Total into plan | | | $15,765.12 |
| | | | |
| Priority Atty fees | | | $500.00 |
| Trustee's commission | | | $1,433.19 |
| Hyundai secured claim @ 7.7% | 36 | $251.93 | $9,069.30 |
| Available for unsecured | | | $4,762.62 |
| | | | |
| General unsecured | | | $24,955.73 |
| Hyundai unsecured | | | $1,382.52 |
| total unsecured | | | $26,338.25 |
| | | | |
| % payout on unsecured | | | 18.1% |