In re James S. KOLBE, Debtor.

In re Patricia A. WHITLEY, Debtor.

Bankruptcy Nos. 95–5–7551–SD, 95–5–7553–SD.

United States Bankruptcy Court,
D. Maryland.

Aug. 1, 1996.

**570**

Ellen Cosby, Chapter 13 Trustee, Baltimore, Maryland.

Mark F. Scurti, Baltimore, Maryland, for debtors.

*MEMORANDUM DENYING CON-
FIRMATION OF CHAPTER
13 PLANS*

E. STEPHEN DERBY, Bankruptcy
Judge.

## I. INTRODUCTION

The issue in the present cases is whether debtors' proposed separate classification and treatment of student loan debts in their respective Chapter 13 plans unfairly discriminates against other unsecured creditors. For reasons discussed herein, the court finds that the current proposals by the debtors unfairly discriminate against the other unsecured creditors. Therefore, the plans cannot be confirmed.

## II. FACTS

The debtor in each case has filed a Motion to Classify Governmental Secured Student Loans Under 523(a)(8) as a Separate Unsecured Class and to Allow for Treatment Separate from General Unsecured Creditors. The trustee has filed a memorandum objecting to confirmation in each case. Each debtor has submitted a plan that calls for 100% repayment of student loans and pro rata distributions on all other unsecured claims, which each Debtor originally estimated would aggregate 10%. Both plans are presently underfunded to make these intended payments to unsecured creditors, based on claims filed. However, each debtor has stated an intention to amend his or her plan to fund distributions at approximately these levels over 60 months, and the court accepts this premise for purposes of this opinion.

Prior to graduation from college in January, 1991, James Kolbe incurred student loan debt. Mr. Kolbe began making payments on his student loans as required, but at some point he became unable to keep payments current. When his accounts were placed in default, his loans were accelerated; and full payment was demanded. The State of Maryland has filed a claim for an NDSL/Perkins loan in the amount of $8,550.30. The claim for Mr. Kolbe's other student loan has been filed for $1,728.26, making his total student loan claims $10,278.56. Priority claims aggregate approximately $2,100, and other general unsecured claims are $2,469.07.

The facts of *In re Whitley* are similar. Patricia Whitley graduated from college in May, 1993, and began repaying her student loan debt as required. At some point Ms. Whitley was unable to continue payments on her two student loans. She has had payment of her student loans deferred, and her next payment is due on May 11, 1998. However, interest continues to accrue. Her two student loans currently aggregate $3,139.03, based on claims filed. There is a home mortgage arrearage claim of $8,943.44, and other general unsecured claims of $2,846.24.

## III. DISCUSSION

### A. Burden of Proof in § 1322(b)(1) Classification Disputes.

 "[The proponent of a Chapter 13 plan] has the burden of proving that the proposed classification does not discriminate unfairly." *In re Groves*, 39 F.3d 212, 214 (8th Cir.1994). See also *In re Eiland*, 170 B.R. 370, 380 (Bankr.N.D.Ill.1994) ("[D]ebtors have a heavy burden to demonstrate fairness to creditors under § 1322(b)(1)."). Therefore, Mr. Kolbe and Ms. Whitley carry the burden of showing that his or her plan does not unfairly discriminate against each's general unsecured creditors. If either is un-

able to carry this burden, his or her motion cannot be granted.

## B. Approaches for Resolving § 1322(b)(1) Classification Disputes.

In 1990 Congress passed the Student Loan Default Prevention Initiative Act, making student loans that are sponsored or backed by a government or nonprofit institution nondischargeable in Chapter 13 plans. 11 U.S.C. § 1328(a)(2). See *id.* § 523(a)(8). Since then, many courts have considered whether, and under what circumstances, a debtor may place his or her nondischargeable student loan debts in a special class, pursuant to § 1322(b)(1), in order to pay a higher percentage on the student loans than on the debtor's other unsecured debt.

Section 1322(b)(1) permits a plan to "designate a class or classes of unsecured claims, as provided under section 1122 [of the Bankruptcy Code], but may not discriminate unfairly against any class so designated,...." Since § 1322(b)(1) expressly authorizes separate classification of unsecured claims, the focus of the instant inquiry is on whether there is justification for the disparate treatment of student loans. *In re Sullivan,* 195 B.R. 649, 654 (Bankr.W.D.Tex.1996). Several different tests have been used by various courts to determine whether a special classification unfairly discriminates against creditors.

### 1. *The Leser Test.*

The *Leser* test is a four part test: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *In re Leser,* 939 F.2d 669, 672 (8th Cir.1991). This test is the oldest test for determining whether a nondischargeable student loan may be separately classified and treated. It is also the most widely used test, but it has many deficiencies.

One problem associated with the *Leser* test is that the term "reasonable basis" in the first prong lacks precision, and its interpretation is open to a court's subjective discretion.

Therefore, the term is no more explanatory than the statutory limitation of "may not discriminate unfairly." *McCullough v. Brown,* 162 B.R. 506, 509 (N.D.Ill.1993). A judge that decides to use the *Leser* test "wields a nearly unchecked discretion, implementing his or her personal preferences by the manner in which the judge goes about deciding on reasonableness...." *Id.* The test gives no indication of what should be considered reasonable nor why it should be considered as such.

■ Another problem courts have with the *Leser* test is that the concept of necessity to the plan's success that is inherent in the second prong of the test is not an element of fairness or unfairness to creditors. The mere fact that a debtor has the ability to formulate an alternate, nondiscriminatory plan does not by itself mean that a proposed classification discriminates unfairly. *McCullough,* 162 B.R. at 510. The existence of a nondiscriminatory alternative to the plan proposed, without more, does not mean that the proposed plan is necessarily unfair. *In re Benner,* 156 B.R. 631, 634 (Bankr.D.Minn. 1993). Nevertheless, many courts have held that if there is an alternate plan that does not discriminate, the discriminatory plan can not be confirmed. *See In re Chapman,* 146 B.R. 411, 415 (Bankr.N.D.Ill.1992) ("Every extra dime that goes to holders of nondischargeable claims in a Chapter 13 case is one less dime that holders of dischargeable claims get under the plan.").

Finally, the good faith requirement in the third prong of the *Leser* test has been criticized as adding little to the test because every Chapter 13 plan must be made in good faith to be confirmed. 11 U.S.C. § 1325(a)(3); *McCullough,* 162 B.R. at 510. While the *Leser* test is used most often in situations similar to the cases at bar, courts have continued to search for a better test to determine if a special class discriminates unfairly.

### 2. *The Lawson Test.*

A second test that courts have used to determine if a special classification discriminates unfairly is known as the *Lawson* test.

*In re Lawson,* 93 B.R. 979 (Bankr.N.D.Ill. 1988). Under the *Lawson* test "discrimination is 'fair,' and therefore permissible, to the extent that it rationally furthers an articulated, legitimate, interest of the debtor." *Id.* at 984. Mr. Lawson proposed to pay the full amount of his student loans, while paying other unsecured creditors 10% of their claims. *Id.* at 981. The court held that Mr. Lawson's proposed plan was unfair because Mr. Lawson did not show why paying more to his student loan creditors would be in his interest. However, *Lawson* was decided in 1988, when student loan debts in Chapter 13 were dischargeable.

In *In re Willis,* 189 B.R. 203 (N.D.Okl. 1995) the district court applied the *Lawson* test and found that there was no unfair discrimination, because allowing the debtor to pay his student loan debt in full was in his legitimate interest since it would help him obtain a fresh start. *Id.* at 205.

Like the *Leser* test, the *Lawson* test has frequently been criticized. As stated by the court in *McCullough:*

> [The *Lawson* test] invokes the rubric and phraseology of equal protection jurisprudence, which does indeed take such an approach in evaluating the fundamental fairness of any differential treatment of separate classes of people. But the analysis depends on a false parallel, for it equates the decision making status of a private debtor with that of a sovereign state. If a state government were to design a bankruptcy plan and propose some type of discriminatory treatment, perhaps such a rational interest test would be appropriate. But it is readily apparent that individual Chapter 13 debtors cannot properly be viewed as ranking on a parity with a sovereign charged with maximizing its citizens' welfare.

*McCullough,* 162 B.R. at 511. Further, the *Lawson* test focuses on whether a proposal is unfair to the debtor, but it is the debtor who is proposing the discriminatory classification. *Id.* at 511. It appears unlikely that a debtor would propose a plan that unfairly discriminates against the debtor. It will always be in the debtor's best interest to maximize the repayment of nondischargeable debt during the plan, because it will enhance the debtor's fresh start. If the interest in a better fresh start is the primary reason for allowing a discriminatory classification, a debt incurred as a criminal restitution penalty could also be specially classified and paid back at a higher rate than other unsecured debts simply because it too is a nondischargeable debt. Finally, by allowing a special classification and more favorable payments simply because it is in the debtor's best interest, the other unsecured creditors are, in effect, paying back the debtor's nondischargeable debt, for which these creditors are not responsible. *Id.* at 515.

### 3. The Balance Test.

A third test, first used in *McCullough v. Brown,* is that student loans cannot be specially classified simply because they are student loans, and "the debtor must place something material onto the scales to show a correlative benefit to the other unsecured creditors...." *McCullough,* 162 B.R. at 517–18. In *McCullough,* the district court reviewed four separate Chapter 13 cases that involved debtors who proposed to classify student loans specially. Each debtor had his plan confirmed by the bankruptcy court. However, the district court found that there was nothing in any of the debtors' plans to show a correlative benefit to the other unsecured creditors. *Id.* at 518.

■ The balance test appears to offer a quick and easy way to resolve special classification issues. However, it is possible that a special classification would not offer a correlative benefit to the other unsecured creditors, and yet not discriminate unfairly. If the balance test was used in such a situation, the plan would not be confirmed, because there is no benefit to the other unsecured creditors.

### 4. The Husted Test

A fourth test was adopted in response to the weaknesses of the *Leser* test by the bankruptcy court in *In re Husted,* 142 B.R. 72, 74 (Bankr.W.D.N.Y.1992). The court developed a five factor test that called for the following points to be considered:

1. Whether there is a rational basis for the classification;
2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;
3. Whether the discriminatory classification is proposed in good faith;
4. Whether there is a meaningful payment to the class discriminated against;....
5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*Husted,* 142 B.R. at 74 (citations omitted). The *Husted* test was originally used to determine if a debtor could specially classify nondischargeable debt owed for past-due child support, but it can be used to evaluate other proposed special classifications.

In *In re Delauder,* 189 B.R. 639, 643 (Bankr.E.D.Va.1995), the debtor proposed to make his car payments outside the plan and to pay them separately from payments made into the plan. *Id.* at 641. The court applied the *Husted* test, found that the debtor's plan was acceptable, and confirmed the plan. *Id.* at 647. The court warned that *Husted* test is not a bright-line standard and that it should be used and applied on a case-by-case analysis. *Id.* at 644.

In coming to its decision, the court in *Delauder* offered an explanation for each of the five *Husted* factors as used to evaluate a plan classification. The first factor, the court concluded, is most often a method for the court to determine if the special classification would aid in the debtor's rehabilitation. *Delauder,* 189 B.R. at 645, citing *In re Bradley,* 109 B.R. 182, 184 (Bankr.E.D.Va.1990), citing *In re Terry,* 78 B.R. 171 (Bankr.E.D.Tenn. 1987). Debtors will be better rehabilitated if they are allowed to classify specially their nondischargeable debts and to pay them in full during the life of their plans. They will complete their plans with a better fresh start, and they will have no remaining debt at the end of the program.

The court in *In re Sullivan,* however, reasoned that by making a debt nondischargeable, Congress has elevated the need to repay that debt over a debtor's interest in a fresh start. Had Congress supported a policy to allow debtors to repay student loans in full, causing significantly lower amounts to be paid to other unsecured creditors, it could have created a priority status under 11 U.S.C. § 507. *Sullivan,* 195 B.R. at 655. "The fact that [Congress] did not [provide for priority classification] is at least some evidence that priority of repayment for student loans was not the intent of Congress, and that section 1322 should therefore not be interpreted so as to accord such a priority." *Id.* See also *McCullough,* 162 B.R. at 514. The decision on whether a plan will help a debtor's rehabilitation, therefore, must be considered on a case by case basis.

It is possible to better understand the second factor by stating it in the converse: "whether the debtor can carry out the plan without treating the challenged claim differently." *Delauder,* 189 B.R. at 645 (citations omitted). The debtor has the burden to show that the proposed disparate treatment is necessary, not simply convenient. *Delauder,* 189 B.R. at 645. For example, could the plan provide for cure of a default on a student loan, maintenance of regular monthly payments, and reinstatement of the student loan as permitted by 11 U.S.C. § 1322(b)(5)? See 5 King, Collier on Bankruptcy, ¶ 1322.09, pp. 1322–28 (15th ed. 1996). Although such treatment of the student loans may be different than the treatment of other unsecured debt, the prohibition against discrimination unfairly in § 1322(b)(1) would not be applicable because the debtor would be utilizing another option explicitly authorized under § 1322(b)(5). *In re Saulter,* 133 B.R. 148, 150 (Bankr.W.D.Mo.1991). *See also In re Groves,* 39 F.3d at 215; *In re Christophe,* 151 B.R. 475, 480 (Bankr.N.D.Ill.1993). Alternatively, if separate treatment of student loans is necessary, is the degree of favored treatment also necessary, or will a lesser discrimination serve the necessary purpose? Presumably, once the plan is completed, it will leave a debtor with disposable income equal to what had been plan payments to service remaining debt that was not discharged.

■ Where a debtor proposes to treat a class of nondischargeable student loans more favorably than general unsecured creditors, the necessity for such disparate treatment should be balanced with the degree of disparate treatment. If a debtor has absolutely no need to treat a class of nondischargeable student loans differently, it is difficult to imagine how any discriminatory treatment would not be unfair to other unsecured creditors. 11 U.S.C. § 1322(b)(1).

The third element of the test is a good faith consideration. *Delauder,* 189 B.R. at 645. This test is very similar to the third element of the *Leser* test. Although all Chapter 13 plans must be proposed in good faith, a discrete analysis should be made whenever separate classification is proposed. 11 U.S.C. § 1325(a)(3). In the instant case, the good faith of debtors is put at issue by the large difference in the percentage payout on student loans and on other unsecured debt, without the presentation of special factual justification.

The fourth element requires an examination whether there is a meaningful distribution to the remaining unsecured creditors. *Delauder,* 189 B.R. at 646. The *Husted* court said this meant that the unsecured creditors would receive a greater amount "than would be received in a Chapter 7 liquidation...." *Husted,* 142 B.R. at 75. This view is criticized in *McCullough* as too limited:

> [I]t is a total non sequitur to move from the premise that *all* unsecured creditors may recover nothing in Chapter 7 liquidation ... to the conclusion that they may "therefore" sustain sharply different treatment—some of them receiving a greater percentage and some receiving a lesser percentage of their debts—if the debtor chooses to follow a different path under the Code. Chapter 13 carries with it some perceived advantages and some perceived disadvantages in comparison with straight bankruptcy under Chapter 7. What a debtor may not do ... is to pick and choose among the available options in a way that takes advantage of one while

avoiding the costs that Congress has attached to those advantages.
*McCullough,* 162 B.R. at 517.

The court agrees with *McCullough* on this point. The Chapter 7 comparison is not a sufficient reason, by itself, to allow a debtor to create a special class that will be preferred over other unsecured creditors. In Chapter 7 nonpriority unsecured creditors will not be separately classified and will be paid pro rata if there are assets for distribution to them. Further, certain categories of debt, such as student loans, will be excluded from an individual debtor's discharge. 11 U.S.C. § 523(a). The prohibition against unfair discrimination in § 1322(b)(1) is a test in addition to, not duplicative of, the best interests of creditor's test in § 1325(a)(4).

The final element of the *Husted* test is a comparison of what the creditors would receive if there is no special classification to what they would receive with a special classification. *Delauder,* 189 B.R. at 646. The court in *Sullivan* determined that a 20% difference between what unsecured creditors would receive without special classification and what they would receive with the special classification was a fair threshold. *Sullivan,* 195 B.R. at 656. The court said that the 20% threshold was not to be used as a bright-line test; but that if the discrimination was less than 20%, the trustee was not required to object to confirmation. *Id.* However, a trustee that objects to a difference of less than 20% can bring the matter before the court to decide the issue. *Id.*

### 5. *This Court's Approach.*

■ Although special classification of student loans in Chapter 13 is not a new issue to bankruptcy courts, it is one that has not been the subject of a published opinion in this district. Among the several tests that have been used to determine whether a special classification discriminates unfairly, this court finds that the *Husted* test, provides the best guidance for determining the § 1322(b)(1) classification issues in the present cases. However, in applying the test, the court will be sensitive to the fact that the current cases are student loan cases, while *Husted* dealt with past due child support.

The *Husted* test provides more guidance than the *Leser* test, but it does not establish a bright line rule. *Delauder*, 189 B.R. at 644. Rather, the court must conduct a factual case-by-case analysis to determine whether a particular separate classification discriminates unfairly. *Id.* The factors to be considered include the answers to the following five questions:

1. Is there a rational basis for the discriminatory classification?
2. Is the particular disparate treatment necessary to the debtor's plan under Chapter 13?
3. Has the discriminatory classification been proposed in good faith?
4. Is there a meaningful payment to the class of unsecured creditors that have been discriminated against?
5. Is the degree of difference between what the creditors discriminated against will receive under the proposed plan and the amount they would receive if there was no separate classification excessive under the facts of the case?

■ In the cases before the court, each debtor has failed to provide an adequate, rational basis for the classification in response to the first question. While each debtor has shown that he or she will achieve a fresh start if allowed to repay the student loan in full within the plan, neither has shown another reason why the special classification should be allowed. "[T]he nondischargeable nature of a student loan debt is not, by itself, a reasonable basis for discrimination." *In re Sperna*, 173 B.R. 654, 658 (9th Cir. BAP 1994).

The second element stresses the necessity of the disparate treatment to the success of the debtor's plan under Chapter 13. The debtors have failed to show satisfactorily that they could not carry out their plans without treating the disadvantaged claims less favorably. Therefore, they have not demonstrated necessity in response of the second question. See *Delauder*, 189 B.R. at 645. Neither debtor has demonstrated why he or she could not carry out his or her respective plan by treating the student loans and the remainder of each's unsecured debt identically, or by a less discriminatory alternative. While not being allowed to repay the student loans in full under the plan would detract from the debtor's fresh start, the nondischargeability of student loan debts possesses a statutory preference over an unfettered fresh start. *Sullivan*, 195 B.R. at 654–655.

Debtors argue that if the student loan debts are not paid in full during the plan, they will be subject to the same governmental collection methods that originally caused them to file for bankruptcy. Therefore, the proposed discriminatory plans are a necessity. However, debtors unnecessarily pose the question as all or nothing. Based on the facts of each case, there may be degrees between the extremes. It is likely that other plans can be developed to pay the other unsecured creditors a higher percentage than what has been proposed by both debtor. Alternatively, debtors have not shown that a repayment default on the student loans could not be cured through the plan. 11 U.S.C. § 1322(b)(5).

Third, debtors have not shown why the extreme disparities in repayment of nondischargeable student loans and other nonpriority unsecured debt constitutes a proposal made in good faith.

■ The fourth inquiry is whether there will be a meaningful payment to the unfavored class. The debtors in the instant cases claim that the only factor to be considered is the best interests of creditors test, namely, whether unsecured creditors will receive more under the Chapter 13 plan than they would in a Chapter 7 case. 11 U.S.C. § 1325(a)(4). The Chapter 7 comparison is not the sole consideration required to support approval of a special classification. *McCullough*, 162 B.R. at 517. The determination of what is a meaningful payment to the unfavored class must be determined on the facts of each case. Ten percent may constitute a meaningful payment in some cases, but not in others, depending on such factors as the total funds available for payment and the aggregate amount of claims to be paid. However, ten percent over time appears sufficiently small to prompt close

scrutiny, which cannot be accomplished based on the minimal facts presented.

The final element requires the court to compare the percentage payment the non-student loan creditors would receive with the special classification and the percentage payment they would receive without the special classification. Each debtor proposes to amend his or her plan to increase and extend plan payments to provide a payout on student loans as close to 100% as feasible and 10% to the discriminated class of general unsecured creditors. Without such discriminatory treatment, under Mr. Kolbe's plan proposal all unsecured creditors would receive 83%, and under Ms. Whitley's proposal they would receive approximately 57%. Both proposed plans would produce a difference in repayment that is substantially more than the 20% threshold adopted by the court in *Sullivan*, without particularized justification. Both debtors have failed to satisfy this fifth element of the analysis.

Since the debtors have failed to satisfy each element of this test, their current plans cannot be confirmed.

## IV. CONCLUSION

The proposed plans cannot be confirmed because the special classification each proposes unfairly discriminates against unsecured creditors that do not hold nondischargeable student loans. However, there are other options to explore, and confirmation of each plan will be denied, with leave to amend.