**In re Lisa ETHERIDGE, Debtor.**

**No. 02–32347–DHW.**

United States Bankruptcy Court,
M.D. Alabama.

March 28, 2003.

Vonda S. McLeod, Montgomery, AL, for Debtor.

Richard C. Dean, Jr., Montgomery, AL, for Checkcare.

## MEMORANDUM OPINION

DWIGHT H. WILLIAMS, JR., Bankruptcy Judge.

Checkcare Systems ("Checkcare") filed an objection to confirmation of the debtor's proposed chapter 13 plan. The objection came on for an evidentiary hearing on February 10, 2003.

Checkcare asserts that (1) the debtor has not devoted all of her disposable income to fund the plan, (2) the plan has not been proposed in good faith, and (3) the plan unfairly discriminates against Checkcare and other unsecured creditors. The court disagrees.

Most of the relevant facts are not in dispute.

Prior to filing bankruptcy, the debtor wrote numerous worthless checks. Most of the checks were written within a nine-month period in 1999. The checks were worthless either because the accounts on which they were drawn did not exist or because the accounts did not have funds sufficient to cover the check amounts.

The debtor wrote 122 worthless checks to merchants with contracts with Checkcare. The checks totaled approximately $4,000. Checkcare reduced the claim to a civil judgment in the Circuit Court of Montgomery County, Alabama.

Criminal charges were filed against the debtor for the remaining worthless checks.[1] The debtor participated in the pretrial diversion program of the Montgomery County District Attorney's Office. Under that voluntary program, the debtor pled guilty to the charges but entered into a written contract to repay the debt in exchange for suspension of the criminal proceedings. She was neither convicted nor sentenced.

The contract became effective August 1, 2000 and requires the debtor to pay $400 per month toward the $28,000 indebtedness over an initial period of 563 days. The contract was automatically extended when the debtor failed to make timely payments. A balance remains of approximately $20,409.

The debtor filed a petition under chapter 7 of the Bankruptcy Code on October 5, 2000 and received a discharge. Checkcare filed an adversary proceeding to determine the dischargeability of the worthless check debt. The debtor consented to a judgment declaring the debt nondischargeable in the amount of $18,866.60.[2]

Checkcare instituted a garnishment to collect the judgment, and the debtor filed the instant petition under chapter 13 of the Bankruptcy Code on August 6, 2002.

The debtor's plan proposes to pay $330 to the chapter 13 trustee over a period of 54 months, a total of $17,820. The payments would satisfy the secured claim of Max Federal Credit Union[3] and approximately 70% of allowed unsecured claims. The debtor proposed to pay the $400 pretrial diversion payments in full directly to the district attorney outside of the chapter 13 trustee.

---

1. The debtor was charged with numerous counts of theft of property.

2. The amount includes attorney's fees and punitive damages.

3. Max Federal Credit Union has a security interest in the debtor's 1995 Toyota Camry.

The schedules reflect that the debtor owns no real property. Outside of the debt on her automobile ($1,440) and the worthless check debts ($38,698.27), she owes $250 in credit card liability and $1,648 in attorney's fees.

The debtor has been a teacher in the Macon County School System for 8 years. She is not married and has no dependents.

Her schedules reflect a gross income of $3,155 per month with a net income of $2,217 per month. After filing the petition, the debtor received a raise in the amount of $60 per month. She receives raises annually. She receives quarterly bonuses from her employer which vary in amount. The bonus received in January 2003 was at least $100. She has not received a tax refund during the last 3 years.

Her schedules reflect monthly expenses of $1,887.[4] The schedules misstate her renter's insurance at $30 instead of $22.66 per month and misstate her rent at $400 instead of $410 per month.

Since filing, her medical expenses have increased by $15 per month. In addition, her car "keeps breaking down." Her car required repairs postpetition, but she does not have a receipt for the cost. The debtor operates solely on cash. She testified that she will be moving in March 2003 and that her rent will increase from $400 to $500 per month.

If the debtor completes the pretrial diversion contract, the criminal charges will be nol prossed. If the debtor does not complete the contract, she will be convicted and sentenced. The district attorney's office will work with her in an attempt to avoid that result. The debtor's criminal charges carry possible incarceration.[5] However, a conviction without incarceration could nevertheless result in the loss of her employment.[6]

Checkcare objected to confirmation asserting that (1) the debtor has not devoted all of her disposable income to fund the plan, (2) the plan has not been proposed in good faith, and (3) the plan unfairly discriminates against Checkcare and other unsecured creditors.

### Disposable Income

■ Checkcare contends that the debtor has not committed all of her "disposable income" to fund the plan as required by 11 U.S.C. § 1325(b).[7] "Under the disposable income test, the bankruptcy court is to subtract the debtor's budgeted expenses, assuming they are reasonably necessary, from Debtor's income and determine if there is any money left." *Cameron v. Cameron (In re Cameron)*, 243 B.R. 117 (M.D.Ala.1999).

---

**4.** The debtor scheduled her monthly expenses as follows: rent, $400; electricity and heating fuel, $88; telephone, $76; food, $400; clothing, $50; laundry and dry cleaning, $25; medical and dental, $55; transportation, $250; charitable contributions, $50; renter's insurance, $30; auto insurance, $63; pretrial diversion payments, $400.

**5.** The district attorney testified that incarceration would be unusual for the type of offense charged. However, the sentence imposed would ultimately rest with the criminal court judge.

**6.** The debtor testified that the State of Alabama is instituting background checks for teachers. The State has not yet run background checks on teachers in the Macon County School System, but it is only a matter of time. According to the debtor, a conviction would automatically terminate her certification to teach.

**7.** "Disposable income" is defined as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325(b)(2)(A).

■ First, Checkcare argues that the debtor has not devoted her quarterly bonuses, annual raises, and prospective tax refunds to fund the plan.

However, though Checkcare is correct, it appears that these are more than offset by the postpetition increases in the debtor's expenses. In addition, the debtor testified that she has not received a tax refund during the last three years.[8]

■ Second, Checkcare argues that her scheduled expense amounts may be unreliable. Checkcare points to disparities between her expenses as scheduled in the current case, her expenses as scheduled in her previous case, and her expenses as scheduled in a budget prepared for her attorney in 2002.

Though some disparities exist, the court notes that the total amount of her expenses as scheduled in the current case are less than the total of her expenses as scheduled in either the chapter 7 case or the proposed 2002 budget. In addition, fluctuations in one's expenses over a period of two years would be normal and expected.

Upon examination of her current expenses, the court cannot say that they are not "reasonably necessary." [9] *See Cameron*, 243 B.R. at 122 ("The emphasis of the court's evaluation under the disposable income test is whether the debtor's budgeted expenses are reasonably necessary."). The court therefore concludes that she satisfies the "disposable income" test as set forth in 11 U.S.C. § 1325(b).

## Good Faith

Checkcare also contends that the plan has not been proposed in good faith. 11 U.S.C. § 1325(a)(3) requires the court to confirm a plan if, *inter alia*, "the plan has been proposed in good faith and not by any means forbidden by law."

■ The United States Court of Appeals for the Eleventh Circuit considered the good faith requirement in *Kitchens v. Georgia Railroad Bank and Trust (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983). In that case, the Court provided a non-exhaustive list of factors which a bankruptcy court must consider in determining whether the statutory requirement of good faith has been met.[10] The Court held that

8. Moreover, the debtor promised in the pretrial diversion contract to remit her future tax refunds, if any, to satisfy that obligation. She testified that she did not take that action in contemplation of bankruptcy.

9. Checkcare raised the question at trial whether the debtor has accurately reported her rent expense, if any. However, both the debtor and her landlord testified that the debtor currently pays $410 per month, and her landlord testified that she reported the rent on her last tax return. The debtor and her landlord do not have a written lease memorializing their agreement.

10. When considering whether a chapter 13 plan has been proposed in good faith, a bankruptcy court must consider the following factors: (1) amount of debtor's income from all sources; (2) living expenses of debtor and his dependents; (3) amount of attorney fees; (4) probable or expected duration of debtor's Chapter 13 plan; (5) motivations of debtor and his sincerity in seeking relief under provisions of Chapter 13; (6) debtor's degree of effort; (7) debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) frequency with which debtor has sought relief under Bankruptcy Reform Act and its predecessors; (10) circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) burden which plan's administration would place on trustee. In addition, the court may consider the type of the debts to be discharged and whether such debts would be nondischargeable under Chapter 7, and accuracy of plan's statements of debts and expenses and whether any inaccuracies are attempt to mislead court. *See Kitchens*, 702 F.2d at 888–89.

good faith, which defies comprehensive definition, is determined based on the totality of the circumstances in each case: has there "been an abuse of the provisions, purpose or spirit" of the provisions of chapter 13? *Kitchens,* 702 F.2d at 888.

■ Considering the *Kitchens* factors, the court finds that two operate against the debtor: (1) the circumstances under which the debtor has contracted his debts and (2) the nondischargeability of the debtor's worthless check debts in chapter 7. Indeed, the Checkcare debt was adjudicated (by consent) to be nondischargeable in the debtor's previous chapter 7 case.

However, several of the factors operate in the debtor's favor. The debtor's plan proposes to pay 100% of the pretrial diversion payments and 70% of the Checkcare indebtedness over a 54–month term. She filed chapter 13 only because she was unable to make the pretrial diversion payments in the face of the Checkcare garnishment. She had hoped to repay both after discharging her other debts in the previous chapter 7 case.

Upon consideration of the totality of the circumstances, the court concludes that the debtor has proposed the plan in good faith. Particularly persuasive is the debtor's degree of effort in repaying at least 70% of unsecured claims over an extended period of at least 54 months.

### Unfair Discrimination

■ Finally, Checkcare contends that the plan "unfairly" discriminates against Checkcare. 11 U.S.C. § 1322(b)(1) allows a debtor to "designate a class or classes of unsecured claims." However, the debtor may not "discriminate unfairly against any class so designated." *Id.*

Under the plan, the debtor proposes to pay the unsecured pretrial diversion claim in full. However, the debtor proposes to pay only 70% of the remaining unsecured claims, including the claim of Checkcare.

Checkcare contends this treatment constitutes unfair discrimination. The debts are of the same basic type (unsecured debt arising from the issuance of worthless checks) and incurred during the same time period. Both are dischargeable in this chapter 13 case. However, the debtor proposes to repay 100% of one and only 70% of the other.

The issue is whether this discrimination is "unfair" within the meaning of 11 U.S.C. § 1322(b)(1).

The statute does not define "unfair." Courts have formulated various tests to aid in determining what constitutes "unfair" discrimination.

The Eighth Circuit adopted the *Leser* test which examines four factors to determine whether discrimination is unfair:

(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.

*Mickelson v. Leser (In re Leser),* 939 F.2d 669, 672 (8th Cir.1991).

Another test deems discrimination fair "and therefore permissible, to the extent, and only to the extent, that it rationally furthers an articulated, legitimate interest of the debtor." *In re Lawson,* 93 B.R. 979 (Bankr.N.D.Ill.1988) (declined to follow by *McCullough v. Brown (In re Brown),* 162 B.R. 506 (N.D.Ill.1993)).

Other courts adopt a balancing test. The *McCullough* court reversed the *Lawson* court's use of the *Lawson* test in *In re Brown,* 152 B.R. 232 (Bankr.N.D.Ill.1993), concluding that the statute requires "unfair" be viewed from the creditor's perspective. The court therefore chose to balance the "relative benefits allocated to the debtor and creditors from the proposed discrimination." *McCullough,* 162

B.R. at 518. The court held that the debtor must place something material onto the scales to show a correlative benefit to the other unsecured creditors. *See Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229 (1st Cir. BAP 2001). Another court held that

> any analysis of the relative benefits (and detriments) resulting from the proposed discrimination must be undertaken in light of the impact of the discrimination on Congress' chosen statutory definition of the legitimate interests and expectations of parties-in-interest to Chapter 13 proceedings.

*In re Colfer*, 159 B.R. 602 (Bankr.D.Me. 1993). Therefore, the *Colfer* court held that a debtor could not discriminate based solely on the nondischargeable status of the preferred debt.[11] *Id.*

A fourth test is the *Husted* test which examines five factors:

1. Whether there is a rational basis for the classification;

2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;

3. Whether the discriminatory classification is proposed in good faith;

4. Whether there is a meaningful payment to the class discriminated against; . . . .

5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*In re Kolbe*, 199 B.R. 569, 573 (Bankr. D.Md.1996).

■ The instant court declines to adopt any single test. Many of the factors posited across the board may be useful in making the determination of "unfair." Determination of "unfair" must be made on a case-by-case basis. *Kolbe*, 199 B.R. at 573. The debtor has the burden to prove that the classification does not constitute unfair discrimination. *Id.* at 570.

■ In the instant case, the debtor has proposed to separately classify the pretrial diversion debt and pay that debt in full. The classification is based on the consequences of the debtor's failure to comply with the pretrial diversion contract. Failure to comply would bring conviction and possible incarceration.

Checkcare argues that incarceration is unlikely. However true that may be, conviction is not unlikely. Conviction would likely result in the loss of her employment, and loss of the debtor's employment would dramatically reduce the chances that any of the debtor's creditors would be repaid.

Therefore a rational basis exists for the discrimination which is necessary for the debtor's rehabilitation under chapter 13. Indeed, allowing the debtor to discriminate enhances the chances that the discriminated class will receive any repayment at all. The discriminated class therefore receives a correlative benefit.

In addition, the debtor has proposed a meaningful payment to the discriminated class—70% of their claims, which is more than they would receive in a case under chapter 7. There is only a 30% disparity of treatment against the discriminated class.

The debtor has not sought to pay creditors over a minimum of 36 months. Instead, the plan proposes to repay creditors over a term of at least 54 months. Even under a 60–month term, the debtor could not repay all of her unsecured creditors in full. The debtor is not financially able to propose a plan that treats all unsecured creditors alike.

---

11. The court also rejected any notions that "unsecured creditors have no legitimate expectation of *pro rata* treatment" and that satisfaction of the "best interest" test necessarily renders any discrimination fair. *Colfer*, 159 B.R. at 608 n. 20.

The court concludes that the debtor has met her burden of showing, under the facts of the instant case, that the proposed classification does not discriminate unfairly.[12]

A separate order will enter overruling the Checkcare objection to confirmation.

### ORDER OVERRULING OBJECTION TO CONFIRMATION

In accordance with the Memorandum Opinion entered this day, it is hereby

ORDERED that the objection to confirmation filed by Checkcare Systems is OVERRULED, and a separate order will enter confirming the debtor's proposed chapter 13 plan.

---

12. The debtor argued at trial that the plan does not unfairly discriminate among debts because the pretrial diversion obligation is not a "debt." The debtor characterized the obligation as an "ongoing expense." The argument is unpersuasive. 11 U.S.C. § 101(12) defines "debt" as "liability on a claim." 11 U.S.C. § 101(5) broadly defines "claim" to include any "right to payment."