**In re David Lee GREGORY and Wife Lynn Margaret Gregory, Debtors.**

**Bankruptcy No. 91–60280.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

July 22, 1992.

David E. Long, Staff Atty., Tyler, Tex., Chapter 13 Trustee.

Charles E. Lauffer Jr., Hardy & Atherton, Tyler, Tex., for debtors.

Tom Kopf, U.S. Attorney's Office, Tyler, Tex., for the U.S. on behalf of the I.R.S.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

The Sixth Amended Chapter 13 Plan of Debtors, David Lee and wife, Lynn Margaret Gregory came before the Court for confirmation, pursuant to regular setting. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all the issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

David Lee and Lynn Margaret Gregory, hereinafter referred to as ("Debtors"), filed for relief under Chapter 13 of the Bankruptcy Code on February 14, 1991. On May 6, 1992, Debtors' Sixth Amended Chapter 13 Plan came on for confirmation. The seeking of relief by Debtors under Chapter 13 of the Code was precipitated by the Internal Revenue Service's, hereinafter ("IRS"), assessment pursuant to 26 U.S.C. § 6672, of certain nondischargeable taxes resulting from Debtors' ownership and operation of a now defunct corporation. The amount of the assessment is $39,166.77. Debtors have proposed a 36 month plan providing for the payment of all secured and priority unsecured claims. Under Debtors' plan, unsecured creditors will not receive a distribution. Given the large amount of the IRS claim and Debtors' limited monthly disposable income, Debtors are unable to pay this claim in monthly payments over the life of the plan. Instead, Debtors propose to sell their homestead during the 36 month duration of the plan and use a portion of the equity in their home to pay a lump sum directly to the IRS. It is not disputed that Debtors have sufficient equity in their home to fully pay the IRS claim. The IRS has consented to this treatment under the plan.

The Chapter 13 Trustee, hereinafter referred to as ("Trustee"), objects. First, the Trustee argues that Debtors' proposal to pay the IRS in what is essentially a balloon installment is unduly speculative. Second, the Trustee maintains that the Code specifically requires that the priority unsecured claim of the IRS be disbursed to the IRS via the Trustee. Third, the Trustee contends that the plan is under funded in the amount of $3,856.83. The matter was taken under advisement.

## DISCUSSION OF LAW

■ The Court acknowledges the Trustee's reluctance to urge confirmation of a plan funded in large part by a balloon payment. Frequently these balloon payments are the end product from the sale of

a debtor's remaining exempt property and they are always somewhat speculative. Given the uncertainty and risk attendant to any distress sale on which such a plan is based, the Court must consider this type of proposal in the context of a plan's feasibility. 11 U.S.C.A. § 1325(a)(6) (West 1979 and Supp.1992). However, the inclusion of a balloon payment scheme in a plan is not dispositive of a plan's feasibility. Instead, a bankruptcy court must consider the propriety of the balloon payment under the totality of the circumstances. *Matter of McClaflin*, 13 B.R. 530, 533 (Bankr. N.D.Ill.1981).

■ This is not the type of case in which a debtor's proposal to sell a homestead to fund a balloon payment is based largely on unsubstantiated hopes that excess equity can be gleaned from the sale of encumbered property. Debtors' home is valued at an amount in excess of $200,000.00 and is unencumbered. Given that all proposed Chapter 13 plans are somewhat speculative, Debtors' proposal to fund their plan, based in large part on a balloon payment to the IRS, is not so speculative under the circumstances as to render their plan unconfirmable. The Trustee's objection on this ground is overruled.

■ Second, the Trustee objects to Debtors' proposal to act as the disbursing agent, upon the sale of their home, on the lump sum payment of the IRS's priority unsecured claim. The Trustee argues that the Code contemplates (1) that the Trustee act as the disbursing agent through the plan of payments on all priority debts and; (2) that these payments be made periodically. In support of this proposition, the Trustee cites 11 U.S.C.A. § 1322(a)(2) (West 1979 and Supp.1992):

(a) The plan shall—

. . . . .

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim ...

However, by its own terms, § 1322(a)(2) waives the requirement of periodic payments if the holder of the claim so consents. In this case, the IRS has so consented. Therefore, the Court concludes that the absence of the plan's provision for periodic payments on the IRS's claim is not fatal.

■ Furthermore, the Code also provides that *"[e]xcept as otherwise provided in the plan or in the order confirming the plan*, the trustee shall make payments to creditors under the plan." (emphasis added) 11 U.S.C.A. § 1326(c) (West 1979 and Supp.1992). The Fifth Circuit Court of Appeals in *Matter of Foster* recognized that through this provision "the designation of the debtor as .. a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." 670 F.2d 478, 486 (5th Cir.1982). Other courts have come to the same conclusion. *Matter of Aberegg*, 961 F.2d 1307 (7th Cir.1992); *In re Jutila*, 111 B.R. 621, 624 (W.D.Mich. 1989); *Matter of Harris*, 107 B.R. 204, 206–207 (Bankr.D.Neb.1989); *In re Burkhart*, 94 B.R. 724, 725 (Bankr.N.D.Fla. 1988); *In re Wright*, 82 B.R. 422, 423–424 (Bankr.W.D.Va.1988). While the holding of these Courts is premised upon various debtor proposals to act as the disbursing agent for current secured debts, this Court is unaware of any policy reason why a debtor should be per se prohibited from acting as the disbursing agent for a priority claim.[1] Having found no statutory pro-

---

**1.** Section § 1326(c) does not discriminate between secured, priority unsecured, or general unsecured debts.

 This Court is aware of two cases holding generally that it is impermissible for a debtor's plan to provide for the payment of a priority claim "outside the plan." *In re Evans*, 66 B.R. 506, 511 (Bankr.E.D.Pa.1986); *In re Ballard*, 4 B.R. 271, 278 (Bankr.E.D.Va.1980). However, in both cases, the debtors were attempting to deal

with the priority claimants "outside the plan" i.e. the treatment of these creditors was not specified in or governed by the plan. In this case, Debtors are including the IRS in their plan but proposing to act as the disbursing agent on the payment of claims. Unlike the previous cases, the Debtors' plan clearly controls the treatment of the IRS claim. *See Matter of Harris*, 107 B.R. 204, 205 (Bankr.D.Neb.1989) (the

hibition against Debtors' proposal to act as the disbursing agent of the IRS claim, this Court must assess the propriety of confirming a plan with such a proposal.

The principal stated opposition on the part of the Trustee to Debtors' proposal is the fact that should Debtors' plan be confirmed, the Trustee would not receive a commission on any amounts paid to the IRS through the balloon payment. 28 U.S.C.A. § 586(e)(2) (Supp.1992) ("[the Chapter 13 Trustee] shall collect such percentage fee from all payments *received by* [the Chapter 13 Trustee] under [Chapter 13] plans ... for which [the Chapter 13 Trustee] serves as standing Trustee") (emphasis added). Since the Trustee would not "receive" the balloon payment from Debtors for disbursement, the Trustee would not be entitled to recover the statutory commission on this amount.[2] *Matter of Aberegg,* 961 F.2d 1307 (7th Cir.1992); *In re Jutila,* 111 B.R. 621, 624 (W.D.Mich. 1989); *In re Burkhart,* 94 B.R. 724, 725 (Bankr.N.D.Fla.1988); *In re Wright,* 82 B.R. 422, 423 (Bankr.W.D.Va.1988). The Trustee argues that the integrity of the trustee system requires the receipt of the statutory commission for the operation of the system. Indeed, numerous courts have recognized that decisions to allow a debtor to act as a disbursing agent for plan payments, thereby endangering the payment of fees and commissions necessary to the operation of the trustee system, is a significant concern. *Matter of Harris,* 107 B.R. 204, 207 (Bankr.D.Neb.1989); *Wright, supra* at 423; *In re Gaskin,* 79 B.R. 388, 389 (Bankr.C.D.Ill.1987). The Trustee also argues that, absent his control of the receipt and disbursement of the payment to IRS, he will never be in a position to certify to the court that payments under the plan are complete and that all priority claims are paid.

■■■ Additional considerations entering into a court's decision whether to allow a debtor to act as a disbursing agent for certain payments as opposed to mandating that all payments be made through the trustee include:

> Whether the debt is modified by the plan, the sophistication of the creditor, the ability and incentive of the creditor to monitor payments, whether the debt is a commercial or consumer debt, the ability of the debtor to reorganize absent direct payments, whether the payment cannot be delayed, the number of payments proposed to satisfy a claim, whether a direct payment by debtor under the plan will impair the trustee's ability to perform his/her standing trustee duties, and unique or special circumstances of a particular case.

*Matter of Harris,* 107 B.R. 204, 207 (Bankr.D.Neb.1989). Clearly, a court must balance numerous considerations before permitting a debtor to act as a disbursing agent. This Court is convinced that deviation from the normal periodic payments to the trustee and disbursal of those payments by the trustee should only be departed from when the debtor can demonstrate a significant reason for doing so. In this case, after due consideration, this Court is convinced that the facts of Debtors' case justify Debtors' proposal to act as a disbursing agent for the payment of the IRS's claim.

An important factor is that the IRS has agreed to this rather unorthodox treatment of its claim. Had the IRS not been in agreement with this proposed treatment, the Code mandate that priority claims be

---

terms "inside" and "outside" a plan mean different things to different courts).

**2.** Prior to the United States Trustee system and the enactment of 28 U.S.C.A. § 586 the law in this circuit allowed a Chapter 13 Trustee to obtain a commission on all payments provided for in a plan regardless of whether the trustee or the debtor acted as the disbursing agent of the payment. *See Matter of Foster,* 670 F.2d 478, 491 (5th Cir.1982) (relying on the provision in former 11 U.S.C.A. § 1302(e) allowing the

Chapter 13 Trustee to collect a commission on all payments made under the plan). In enacting the 1986 amendments which, inter alia, placed the Chapter 13 Trustee system under the control of the United States Trustee, Congress abrogated § 1302(e) and with it a Chapter 13 Trustee's ability to surcharge payments disbursed directly from the debtor to a creditor. This has had the effect of statutorily overruling this portion of the *Foster* opinion. *See In re Wright,* 82 B.R. 422, 423 (Bankr.W.D.Va.1988).

paid in deferred payments, over the life of the plan, in accordance with § 1322(a)(2), would have to be followed.

Furthermore, the Court places great weight on the fact that this proposal envisions one payment from one source i.e. the sale of Debtors' home. Had Debtors' plan proposed a series of payments on the IRS claim, the Court's decision would have been decidedly different. *See In re Genereux,* 137 B.R. 411, 413 (Bankr.W.D.Wash.1992); *Matter of Harris,* 107 B.R. 204, 209 (Bankr.D.Neb.1989) (no reason to require that the payment of a single payment in satisfaction of a claim be paid through the Chapter 13 Trustee). Also, with the exception of the Trustee, this Court finds that Debtors' remaining creditors are not prejudiced by this proposal. Finally, the Trustee has not demonstrated how the administration of this estate would be assisted by requiring the Debtors to funnel the balloon payment through the Trustee's office.[3] This Court clearly understands and believes that the statutory scheme to fund the trustee system by payment of a commission to the trustee should be preserved and protected. However, maximizing revenue to the trustee is not a goal of the system. To require this type of one time payment to the trustee would be more in the nature of a windfall to the trustee rather than compensation for monitoring and distributing payments made on a periodic basis. In sum, the Court finds that Debtors have demonstrated good cause to allow Debtors to act as the disbursing agent for the payment of the IRS priority unsecured claim upon the sale of Debtors' homestead. The Trustee's objection is overruled.

Third, the Trustee argues that the plan is under funded. It is clear from a review of the Trustee's report that this under funding is related to Debtors' failure to account for the Trustee's commission should the IRS claim be included in the plan subject to disbursement by the Trustee. Since this payment will not be included, the plan is not underfunded. Debtors are instructed

to submit an order of confirmation to the Court within five (5) days. The Debtors' Sixth Amended Chapter 13 Plan is confirmed.

---

**3.** Under the facts of this case, the Trustee's general responsibility for supervision over the progress of Chapter 13 plans is not impugned.

Unlike many unsecured creditors, the IRS is a sophisticated creditor completely able to protect its own interests.