In re William & Julie REID, Appellants.

FIRST BANK AND TRUST, Appellant,

v.

Michael GROSS, Trustee, Appellee.

Nos. 1:94–CV–538, 94–CV–539.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 28, 1995.

John Joseph Durkay, Mehaffy & Weber, Beaumont, TX, Robert Barron, Nederland, TX, Marc P. Henry, Lewis & Henry, Beaumont, TX.

James Thomas Worthen, Tyler, TX.

## MEMORANDUM OPINION

COBB, District Judge.

William Reid, Julie Reid and First Bank and Trust (appellants), appealed from the decision of the bankruptcy judge that denied confirmation of an amended Chapter 13 plan.

Appellants contend that the bankruptcy court erred by refusing to apply section 1322(b)(2) which permits the debtor to make direct payments to creditors outside the Chapter 13 plan. This court recognizes that, in certain circumstances, debtors may act as disbursing agents and make payments directly to creditors. In this case, however, the debtors present no significant or compelling reasons for this court to permit them to act as their own disbursing agents.

Through their amended Chapter 13 plan and reaffirmation agreement, the debtors are simply attempting to avoid paying the trustee's fees. Permitting the strategic reaffirmation of prior loan agreements to circumvent trustee's fees would frustrate the goals of the trustee system and call into question the integrity of the Bankruptcy Code. The bankruptcy court properly refused to allow the debtors to use the reaffirmation agreement as an excuse to amend their Chapter 13 plan. This court finds no reason to disturb the bankruptcy court's ruling; the decision of the bankruptcy court is in all things AFFIRMED.

## BACKGROUND

The debtors, William and Julie Reid, filed a Chapter 13 petition and their original Chapter 13 reorganization plan on January 18, 1994. The original Chapter 13 plan denoted First Bank and Trust, Groves, Texas (Bank) and Dillard's Department Store (Dillard's) as impaired secured creditors. The debtors owed the Bank money for an automobile loan. The Bank listed its scheduled debt as $13,214.00 and the debtors valued the automobile at $10,600.00. The debtors owed Dillard's $2,150.00 and were to pay $350.00 as the value of the collateral under the plan. The original plan also called for the debtors to pay the Chapter 13 Trustee $405.00 for forty-eight months to fund this plan. The standard ten percent trustee's fee for the administration of this bankruptcy added $1,944.00 over the life of the plan.

The Reids then filed an amended reorganization plan on April 29, 1994. This amended plan was based on a reaffirmation agreement entered by the Bank and the Reids. The agreement reduced the amount of the sched-

uled debt from $13,214.00 to $12,015.92. The amended plan showed an increase in the value of the collateral from $10,600.00 to 12,015.92. The amended plan also proposed that the debtors would pay their secured debt directly to the Bank. This reaffirmed loan agreement under the amended plan decreased the total amount paid, lowered the interest payments and circumvented the trustee's commission by permitting the debtor to pay the creditor directly.

Under the amended plan, the debtor would pay $405.00 for the first three months of the plan. Thereafter, the debtors would pay only $95.00 for the remaining term. The debtors planned to pay $279.44 per month directly to the Bank for approximately the same forty-eight month period. This amended plan reduced the total trustee's fee from $1,944.00 to $549.00. Furthermore, the status and treatment of the secured debt owed to Dillard's remained the same.

The Trustee objected to the confirmation of this plan and a hearing was scheduled. The Honorable Donald R. Sharp, United States Bankruptcy Judge for the Eastern District of Texas, held a confirmation hearing for the amended plan on July 20, 1994. In denying the confirmation of the plan, the court held that the reaffirmation agreement could not be enforced by the Bank. The court also explained that, for the reaffirmation agreement to have any binding effect, it should be paid through the plan by the trustee. The court reasoned that Congress set up the trustee system for the trustee to administer Chapter 13 plans. The court determined that, once the debtor avails himself of the bankruptcy system, the debtor should not be permitted to circumvent the system and make payments directly to certain creditors absent compelling and exigent circumstances.

The debtors and the Bank then appealed the decision of the bankruptcy court. The National Association of Chapter 13 Trustees filed an *amicus curiae* brief in support of the trustee's position.

## ANALYSIS

This court has jurisdiction of an appeal from the United States Bankruptcy

Court for the Eastern District of Texas pursuant to 28 U.S.C. section 158(a). The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Fed. Bankr.R. 8013. The bankruptcy court's conclusions of law are subject to *de novo* review. *Matter of Perez,* 954 F.2d 1026, 1027 (5th Cir.1992); *Matter of T.B. Westex Foods,* 950 F.2d 1187, 1190 (5th Cir.1992). In the case *sub judice,* this court must determine whether the bankruptcy court properly refused to confirm a Chapter 13 plan. This court's decision involves mixed questions of law and fact.

■ Chapter 13 of the Bankruptcy Code permits individual debtors with regular income to propose a repayment plan for all or a portion of the claims against the debtors' future income. 11 U.S.C. §§ 1301–1330; *and see Matter of Foster,* 670 F.2d 478, 483 (5th Cir.1982). As a matter of law, the bankruptcy court must confirm a Chapter 13 plan if it meets all of the requirements of section 1325(a).[1]

The Chapter 13 plan itself must contain three provisions:

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a). Section 1322(b) also contains certain discretionary provisions which may be included in the plan.

■ The appellants contend that the bankruptcy court erred as a matter of law in denying the amended plan because it met all of the section 1325(a) requirements. This court disagrees. The amended plan fails to treat all impaired secured creditors equally under 1322(a)(3) and, as such, fails to satisfy 1325(a)(1). Dillard's, an impaired secured creditor, is treated differently than the Bank. The debtors do not pay Dillard's directly under their amended plan and, as a result, Dillard's could not avoid the administrative expenses trustee's fee during the loan repayment period. Under the amended plan, only the Bank could avoid these expenses by "booking" its collateralized cash flow. Consequently, the plan violates section 1322(a)(3).

■ Additionally, the general rule requires that debts provided for in a Chapter 13 plan be paid through the Chapter 13 Trustee. 11 U.S.C. § 1322(a)(1). Section 1326(c) demonstrates that this method of disbursement is not exclusive by providing that "[e]xcept as otherwise provided in the plan . . . the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c). The Fifth Circuit interpreted sections 1326(c) and 1322(a)(1) as granting the decision of whether a debtor may act as a disbursing

---

1. 11 U.S.C. section 1325(a) provides that:
Except as provided in subsection (b), the court shall confirm a plan if—
   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
   (5) with respect to each allowed secured claim provided for by the plan—
     (A) the holder of such claim has accepted the plan;
     (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
     (C) the debtor surrenders the property securing such claim to such holder; and
   (6) the debtor will be able to make all payments under the plan and comply with the plan.

agent to the sound discretion of the bankruptcy judge. *Matter of Foster*, 670 F.2d at 480.[2]

■ Courts consider certain factors before permitting a debtor to act as his own disbursing agent. *See In re Gregory*, 143 B.R. at 427. The court in *In re Gregory* weighed the following factors:

Whether the debt is modified by the plan, the sophistication of the creditor, the ability and incentive of the creditor to monitor payments, whether the debt is a commercial or consumer debt, the ability of the debtor to reorganize absent direct payments, whether the payment cannot be delayed, the number of payments proposed to satisfy a claim, whether a direct payment by a debtor under the plan will impair the trustee's ability to perform his/her standing trustee duties, and unique or special circumstances of a particular case.

*In re Gregory*, 143 B.R. at 427 (citing *Matter of Harris*, 107 B.R. 204, 207 (Bankr.D.Neb. 1989). Furthermore, many courts draw a distinction between permitting a debtor to disburse mortgage payments and permitting a debtor to disburse arrearage payments. *See Matter of Aberegg*, 961 F.2d 1307, 1310 n. 3 (7th Cir.1992) (citing *In re Burkhart*, 94 B.R. 724, 726 (Bankr.N.D.Fla.1988)). Arrearage payments should generally be distributed by the trustee. *Id.*

■ In the present case, both the Reids and the Bank assert that the bankruptcy judge erred by not confirming the amended reorganization plan. The appellants maintain that debtors are permitted to pay secured creditors directly outside the Chapter 13 plan. This court finds no fault with this generalization. The Fifth Circuit expressly permits debtors to act as disbursing agents. *Matter of Foster*, 670 F.2d at 480.

■ However, the decision to permit a debtor to act as his own disbursing agent is left to the discretion of the bankruptcy judge.

*Id.* In considering whether to permit the debtor to act as his own disbursing agent in this case, the bankruptcy court analyzed the viability and enforceability of the reaffirmation agreement that prompted the parties to submit an amended plan. The court first explained that reaffirmation agreements should be used to deal with dischargeable debt and are normally agreements to pay creditors following the discharge of debt. The court ruled that reaffirmation agreements should not be used as substitutes for reorganization plans. (Confirmation Hearing Transcript (CHT) at 11–12).

The court then questioned the enforceability of the reaffirmation agreement. The court mused that the only way to enforce this agreement would be to make it part of the plan and thereby force the trustee to monitor the payment schedule. Common sense dictates that the payments should be made through the trustee if the trustee would be forced to expend effort to monitor the payment schedule.

Finally, in analyzing this plan, the bankruptcy court held that the reaffirmation of the loan agreement and the subsequent submission of an amended reorganization plan appear to be tools used by the debtor and creditor to attempt to circumvent the "bankruptcy game." (CHT at 11).

■ This court agrees with the bankruptcy court's decision. The motivation for the reaffirmation agreement appears to be to avoid the payment of the trustee's fee. In analogous cases, other courts refused to allow debtors to make periodic payments directly to secured creditors simply to avoid payment of the trustee's fee and circumvent the bankruptcy game. *See In re Genereux*, 137 B.R. 411, 413 (Bankr.W.D.Wash.1992); *Matter of Harris*, 107 B.R. at 206–07.

For example, in *Genereux*, the debtor attempted to pay an automobile loan directly to the bank and avoid the trustee's fee. *Gener-*

---

2. Congress's enactment of 28 U.S.C. section 586(e)(2) limited the application of a trustee's commission to a percentage fee from all payments received by the trustee. *See also In re Gregory*, 143 B.R. 424, 427 (Bankr.E.D.Tex. 1992). Consequently, section 586 provided an avenue whereby debtors could avoid commission payments by directly paying creditors. This section also effectively overruled the portion of *Matter of Foster* that allowed the trustee to collect commissions even on a debtor's direct payments to a creditor. *See In re Gregory,* 143 B.R. at 427–28.

*eux,* 137 B.R. at 412. The court held that avoiding a trustee's fee is an insufficient reason to permit debtors to make direct payments to creditors on a monthly or periodic basis. *Id.* (citing *Matter of Harris,* 107 B.R. at 209). The court reasoned that the additional burden of potentially supervising hundreds of direct payments by debtors would require substantial effort and has the potential to permit, if not foster, abuse of the system. *Id.* Additionally, the trustee system was envisioned by Congress as a self-funding program. 28 U.S.C. § 586(e). Allowing direct payments of this kind will seriously affect the self-funding goal of the trustee system.

In the present case, the debtors proposed to make periodic payments directly to the Bank. Appellants offer no valid reasons why the bank's secured automobile loan should be paid directly by the debtor. The questions surrounding the validity and enforceability of the reaffirmation agreement, coupled with the fact that payments under this agreement are periodic as opposed to lump sum payments,[3] and the possibility that debtors will abuse the bankruptcy system if they are permitted to act as disbursing agents simply to avoid trustees' fees, show that the bankruptcy court's decision to deny the confirmation of this Chapter 13 plan was proper.

It requires little imagination to envision the abuse which could be engendered if the bankruptcy court's decision is reversed. A person teetering on the feathered edge of financial stability in his own community could incur debts for a myriad of goods (outside the preference period) with a tacit or explicit understanding that a subsequent reaffirmation would occur after discharge. This reaffirmation would reorganize liens previously given, with or without uneven amounts of repayment obligations, and thereby eviscerate the valid and laudatory reasons for Congress' enactment of Chapter 13 which was to allow individuals a new start in this troubled national economy.

**3.** *See In re Gregory,* 143 B.R. at 428 (The court placed great emphasis on the fact that, under the plan, the debtor would make one payment to the creditor. The court postulated that "[h]ad Debt-

For the foregoing reason, this court AFFIRMS the decision of the bankruptcy court.

ors' plan proposed a series of payments on the IRS claim, the Court's decision would have been decidedly different." *Id.*