CASH IN A FLASH, Plaintiff–Appellant,

v.

Kisha Lavae BROWN, Defendant–Appellee;

Cash in a Flash, Plaintiff–Appellant,

v.

Adam Chandler, Defendant–Appellee.

Nos. 98–2476, 98–2475.

United States District Court,
W.D. Tennessee.

Jan. 26, 1999.

F. Michael Bursi, Rice Rice Smith Bursi Veasey & Amundsen, Memphis, TN, for Cash in a Flash Check Advance, LLC., appellant.

Melinda S. Benham, Benham Law Office, Memphis, TN, for Adam B. Chandler, appellee.

George W. Stevenson, United States Chapter 13 Trustee's Office, Memphis, TN, trustee.

Raymond Weber, Weber & Associates, Memphis, TN, for Kisha Lavae Brown, appellee.

Jed G. Weintraub, Memphis, TN, pro se.

Jennie D. Latta, Memphis, TN, pro se.

George W Stevenson, Memphis, TN, trustee pro se.

## MEMORANDUM OPINION

DONALD, District Judge.

These cases are before the court on appeal by Creditor Cash in a Flash from a bankruptcy judge's refusal to approve proposed settlements submitted in Chapter 13 proceedings initiated by Debtors Kisha Lavae Brown ("Brown") and Adam B. Chandler ("Chandler"). Because these cases involve the same creditor and present virtually identical factual and legal issues, the court will consider both cases together in this memorandum opinion. This court has jurisdiction of an appeal from the United States Bankruptcy Court for the Western District of Tennessee pursuant to 28 U.S.C. § 158(a).

For the following reasons, this court affirms the bankruptcy court's refusal to approve the proposed settlements in the Chapter 13 proceedings of Debtors Brown and Chandler.

## I. FACTS

Appellant Cash in a Flash is a deferred presentment service provider as defined by Tenn.Code Ann. § 45–17–102(4). A deferred presentment service refers to a transaction whereby a business agrees to cash a customer's check for a fee and further agrees not to present the check for payment for a certain period of time. After that time has expired, the customer must redeem the check by repaying the money it received or the deferred presentment provider can proceed to deposit or cash the check. According to the business practices of Cash in a Flash, a customer who cashed a check pursuant to a deferred presentment agreement was obligated to render his deferred check payable upon presentment fourteen days from the date the customer's check was issued.

### KISHA LAVAE BROWN

Brown first obtained deferred presentment services from Cash in a Flash on April 11, 1997. Later, Brown opened an account at another Cash in a Flash store and both accounts were handled satisfactorily from April to July 1997. On May 10, 1997, Brown signed a contract with Cash in a Flash whereby she agreed to render any check payable upon presentment after fourteen days had lapsed from the date of the check's issuance.

On July 28, 1997, Brown filed a voluntary Chapter 13 petition. In Brown's petition, Cash in a Flash and three other finance and deferred presentment companies were listed on Schedule F as creditors holding unsecured nonpriority claims. Brown listed Cash in a Flash as holding a claim in the amount of $442.00. Under Brown's proposed reorganization plan, Cash in a Flash's claim was deemed a general unsecured claim to be repaid at a percentage determined by the Chapter 13 trustee upon the expiration of the ninety-day bar date for filing proofs of claim. Cash in a Flash filed proof of a claim for $1,593.33. On September 3, 1997, Cash in a Flash filed an objection to confirmation of Brown's reorganization plan on the grounds that "the debtors' proposed plan does not comply with the provisions of 11 U.S.C. §§ 361, 362, 365, 1301, 1325, and 109."

On or about October 14, 1997, Brown's attorney, Brian W. Lynn, and F. Michael Bursi, counsel for Cash in a Flash submitted a proposed "Consent Order Withdrawing Objection to Confirmation of Cash in a Flash." This consent order sought to modify Brown's reorganization plan by classifying $445.00 of Cash in a Flash's claim as a Class I[1] unsecured claim to be repaid at a rate of $10.00 per month, with the balance of the claim, if any, to be paid as a general, unsecured creditor. Cash in a Flash explained that this classification was created because Brown had issued two worthless checks to its business within ninety days of filing a Chapter 13 bankruptcy petition. Although Brown failed

---

1. George W. Stevenson, a standing Chapter 13 trustee for the Western District of Tennessee and trustee for both the Brown and Chandler matters, explained that Class I, unsecured claims are generally paid in full before general unsecured creditors receive any distribution.

to appear at these hearings, her attorney did attend and represented her interests.

## ADAM CHANDLER

Chandler first obtained deferred presentment services from Cash in a Flash on April 29, 1997. From April 29 to May 31, 1997, Chandler delivered four checks to Cash in a Flash pursuant to deferred presentment agreements. The last of these checks was issued on May 31, 1997 in the amount of $238.00.

On August 6, 1997, Chandler filed a voluntary Chapter 13 petition. In his petition, Chandler listed Cash in a Flash and four other finance and deferred presentment companies as Schedule F unsecured nonpriority creditors. Chandler listed Cash in a Flash as holding a claim in the amount of $165.00. Chandler's reorganization plan treated Cash in a Flash's claim as a general unsecured claim and provided for 100% repayment of the claim over approximately sixty months. Subsequently, Cash in a Flash filed a claim against Chandler in the amount of $817.33.

On September 10, 1997, Cash in a Flash filed an objection to Chandler's plan on the grounds that "the debtors' proposed plan does not comply with the provisions of 11 U.S.C. §§ 361, 362, 365, 1301, 1325, and 109." On or about November 17, 1997, Chandler's attorney, Melinda Benham, and Bursi, counsel for Cash in a Flash, submitted a proposed "Consent Order Withdrawing Objection to Confirmation of Cash in a Flash." This consent order sought to modify Chandler's reorganization plan by placing Cash in a Flash's claim of $238.00 into a special class of unsecured creditors. Under this classification, the claim would be paid in full at a rate of $10.00 per month. At that modified rate, Cash in a Flash's claim would be repaid in twenty-four months. The bankruptcy court was unable to determine from the consent order whether the proposed settlement was appropriate under 11 U.S.C. § 1322(b)(1) and accordingly scheduled consolidated hearings on January 21, 28, and February 13, 1998. Although Chandler failed to appear at these hearings, his attorney did attend and represented his interests.

## II. ISSUES PRESENTED

In their briefs, Debtors and Cash in a Flash have identified two issues to be resolved by this court. The first question presented is whether the trial court erred by adopting the four-part test articulated in *In re Hosler*, 12 B.R. 395 (Bankr.S.D.Ohio 1981) to analyze 11 U.S.C. § 1322(b)(1) instead of the alleged "more comprehensive" test articulated in *In re Husted*, 142 B.R. 72 (Bankr. W.D.N.Y.1992). The second question presented is whether the Debtors' modified Chapter 13 reorganization plans satisfy the requirements of 11 U.S.C. § 1322(b)(1).

## III. DISCUSSION

When a district court reviews a bankruptcy court's finding of facts on appeal, those findings should not be set aside unless they are clearly erroneous. Fed.Bankr.R. 8013. Moreover, Rule 8013 also instructs district courts to give due regard to "the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. Bankr.R. 8013. After reviewing the record, the court has found no evidence suggesting that any of the bankruptcy court's findings of fact are clearly erroneous nor have the Debtors or Cash in a Flash made any allegations to that effect. Accordingly, the court adopts the findings of fact made by the bankruptcy court. The bankruptcy court's conclusions of law are subject to de novo review. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255 (6th Cir.1997), *cert. denied, Wesbanco Bank Barnesville v. Customer Creditors*, —— U.S. ——, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997).

### A. THE APPROPRIATE TEST

Cash in a Flash contends that the Bankruptcy Court erred in its analysis of whether Debtors' Chapter 13 plans violated 11 U.S.C. § 1322(b)(1) when it relied upon the four-part *Hosler* test to assess the plans. Although Cash in a Flash concedes that the *Hosler* test has gained widespread acceptance and use among bankruptcy courts, it contends that the test has been appropriately criticized for its ambiguity, the irrelevance of one of its factors, and its narrow scope. Because there is no Sixth Circuit precedent

concerning the proper interpretation of 11 U.S.C. § 1322(b)(1), Cash in a Flash urges the court to declare the *Husted* test as the appropriate analytical framework for interpreting 11 U.S.C. § 1322(b)(1).

The statutory provision in question, § 1322 of the Bankruptcy Code, states in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but *may not discriminate unfairly against any class so designated,* however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

11 U.S.C. § 1322(b)(1) (1994) (emphasis added).

The statutory phrase "discriminate unfairly" is ambiguous and has been the source of much litigation in the nation's bankruptcy courts. *See, e.g. In re Chapman,* 146 B.R. 411 (Bankr.N.D.Ill.1992); *In re Bradley,* 109 B.R. 182 (Bankr.E.D.Va.1990); *In re Easley,* 72 B.R. 948 (Bankr.M.D.Tenn.1987). The legislative history of § 1322 provides no guidance to courts in discerning what constitutes unfair discrimination in a debtor's classification of claims. In the absence of this guidance, the federal bankruptcy, district and circuit courts have crafted various legal tests to determine whether a particular classification is unfairly discriminatory. Most bankruptcy courts have chosen to use the four-part test originally articulated in *In re Kovich,* 4 B.R. 403 (Bankr.W.D.Mich.1980). *McCullough v. Brown,* 162 B.R. 506, 509 (N.D.Ill.1993). The *Hosler* test used by the bankruptcy court in the present case is the same as that used in *In re Kovich.*

In *Hosler,* Chapter 13 debtors proposed a reorganization plan whereby they would make 100% payment on unsecured claims held by medical doctors who were providing ongoing treatment to members of the debtors' family. The remaining unsecured creditors would only receive 20% payment on their claims against the debtors. One of the unsecured creditors scheduled to receive 20%

payment filed an objection to confirmation of the debtors' plan on the grounds that the plan violated the prohibitions against unfair class discrimination in § 1322(a)(3) and (b)(1) of the Bankruptcy Code. The *Hosler* court explained that judicial determination of whether discriminatory treatment is fair or unfair requires case-by-case application of a subjective test:

1) whether the discrimination has a reasonable basis;

2) whether the debtor can carry out a plan without such discrimination;

3) whether such discrimination is proposed in good faith; and

4) the treatment of the class discriminated against.

*Hosler* at 396.

The court applied the test and found that the discriminatory treatment was unfair because the debtors had failed to show that the classification was necessary, there was another medical claim not benefitting from the classification, and the discrimination was significant. *Id.*

Cash in a Flash avers that the *Hosler* test has been criticized by other courts for its lack of definition and for its inclusion of necessity as an element of fairness or unfairness. Because of these defects, Cash in a Flash contends that this court should reject the *Hosler* test in favor of a more relevant and comprehensive test. Cash in a Flash further contends that the *Husted* court's approach offers just such a test and should be adopted by this court in analyzing unfair discrimination under 11 U.S.C. § 1322.

In *Husted,* a debtor's Chapter 13 reorganization plan proposed to pay 100% on a former spouse's claim for delinquent child support over the course of five years while only paying 25% on the claims of all other unsecured creditors. Although no objections were raised by any creditors, the court, on its own initiative, examined the propriety of the discriminatory treatment under § 1322(b)(1). While the court acknowledged that most courts had used *In re Kovich's* four-factor test, it believed that a fifth factor should be considered in assessing the fairness of a

creditor classification. *Husted* at 74. Thus, the *Husted* court applied the following test in determining whether debtor's plan violated § 1322(b)(1):

1) Whether there is a rational basis for the classification;

2) Whether the classification is necessary to the debtor's rehabilitation under Chapter 13;

3) Whether the discriminatory classification is proposed in good faith;

4) Whether there is a meaningful payment to the class discriminated against;

5) The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no classification.

*Id.*

The *Husted* court found that 1) the debtor's plan had a rational basis for its discriminatory classification, 2) the classification was necessary to the debtor's overall rehabilitation 3) the classification was proposed in good faith, 4) the 25% payment to the other unsecured creditors was a meaningful payment because it was more than what they would have received in a Chapter 7 liquidation case, and 5) the other unsecured creditors would recover more of their claim under this plan than under a three-year plan where all of the debtor's disposable income was devoted to the plan. *Id.* at 75. Accordingly, the court confirmed the debtor's modified plan.

Notwithstanding Cash in a Flash's attack upon the relevance and efficacy of the four-factor test, the court finds very little difference in the *Hosler* and *Husted* tests. Cash in a Flash cites *McCullough* for support of its proposition that the *Hosler* test fails to delineate a meaningful definition of unfair discrimination. *See McCullough* at 509 (noting that the term 'reasonable basis' lacks precision and is no more explanatory than 'may not discriminate unfairly'). However, the term 'rational basis' used in the *Husted* test is no more enlightening on the matter of unfair discrimination than the *Hosler* test's use of 'reasonable basis.' The court fails to see how the use of 'rational basis' provides any additional guidance as to what constitutes unfair discrimination under

§ 1322(b)(1). Rather, the court finds that the *Husted* test is susceptible to the same allegations of ambiguity raised by Cash in a Flash against the *Hosler* test. Where the criticism of ambiguity is equally applicable to the proposed alternative, Cash in a Flash has no valid basis to suggest that the bankruptcy court should have used the *Husted* test instead of the *Hosler* test.

Cash in a Flash also argues that the *Hosler* test should be rejected because the concept of necessity, found in the second prong of the test, is irrelevant to the fairness of a discriminatory classification. This argument is disingenuous. The *Husted* test also includes the concept of necessity in its analytical framework. If the *Hosler* test is defective and should be discarded because it includes an irrelevant factor, then the *Husted* test is equally defective and should suffer the same fate.

Cash in a Flash further argues that the *Husted* test should have been used in the bankruptcy court below because it is more comprehensive in scope and therefore more useful in assessing fairness than the *Hosler* test. Although the mere observation that the *Husted* test is a five-factor test while its *Hosler* counterpart only contains four-factors might appear to render the *Husted* test more comprehensive, further scrutiny reveals that both tests direct a reviewing court's attention to the same basic considerations. A quick comparison of the *Hosler* and *Husted* tests shows that the first three factors of both tests are the same. The apparent difference arises from the last factor of the *Hosler* test and the last two factors of the *Husted* test. Under the *Hosler* test, a court must examine the treatment of the class which the debtor has discriminated against in his reorganization plan. Under the *Husted* test, the court should examine whether the plan provides a meaningful payment to the creditors which were discriminated against and evaluate the difference between what those creditors will receive under the plan in question and the amount they would receive if no classification existed in the plan. These factors are not separate and independent from the *Hosler* question of how the plan treats the disfavored creditors. Rather, the considerations

raised by the fourth and fifth factors of the *Husted* test should be part and parcel of examining how the disfavored creditors have been treated. A court examining the treatment of the class discriminated against will answer the question of whether a meaningful payment has been made to that class of creditors. A court examining the treatment of the class discriminated against will also make the comparison between what that class will receive under the proposed plan and what they would receive if there were no discrimination among the creditors. *See, e.g., In re Kovich* at 407. In essence, the fourth and fifth factors of the *Husted* test simply identify more specific inquiries that are already covered under the broader umbrella of examining the treatment of the class discriminated against.

By concluding that there are no significant differences between the *Hosler* and *Husted* tests, the court does not mean to suggest that there is no room for improvement in the *Hosler* test or that there may not be any advantages to the *Husted* test. Quite to the contrary, the court found some of the *McCullough* court's critique of the *Hosler* test to be persuasive. The court agrees with the *McCullough* court when it stated that "the fact that a debtor has the ability to formulate an alternative nondiscriminatory plan should not alone be sufficient to render it unfair." *McCullough* at 510, *accord In re Kolbe,* 199 B.R. 569, 571 (Bankr.D.Md.1996), *In re Terry,* 78 B.R. 171, 173 (Bankr.E.D.Tenn.1987). Although a court should consider whether the proposed discrimination is necessary for the debtor to carry out a reorganization plan, a finding that the a Chapter 13 debtor could be rehabilitated without the proposed discrimination should not be dispositive of a fairness determination. Rather, the court should weigh this finding along with its evaluations of the other three factors articulated in the *Hosler* test. Moreover, there may be some advantage to the fourth and fifth factors of the *Husted* test in that the explicit articulation of these factors reminds a court examining the fairness of a classification to assess whether the payment is meaningful and to compare what the disfavored creditors receive under the current plan to what they would receive under a plan without classifications.

▮ None of these observations renders the *Hosler* test fatally flawed or less comprehensive than its *Husted* counterpart. The *Hosler* test is still useful to courts examining the fairness of a discriminatory classification where it is employed, not as a rigid, mechanical formula, but as a guidepost pointing to the overarching objective of determining whether a classification is unfair. Cash in a Flash has identified no shortcoming in the *Hosler* test which would make a court using it incapable of accurately assessing whether a particular classification is unfairly discriminatory.

The lack of substantive discussion in opinions adopting the *Hosler* test noted by the *McCullough* court may not be indicative of an inherent defect in the test itself, but of a failure by courts to clearly and explicitly explain their evaluation of a classification under each and every prong of the test. Comprehensive and thorough analysis enhances the legitimacy of these types of decisions and insulates them against allegations of judicial imperialism or unbridled discretion. Accordingly, this court is sympathetic to the concerns raised by Cash in a Flash about the extent of the bankruptcy court's analysis of the facts under the *Hosler* test. Although Cash in a Flash's allegation that the bankruptcy court "made the ruling without applying the facts" is a gross exaggeration, the court did note that the bankruptcy court's memorandum opinion failed to clearly and fully apply each prong of the *Hosler* test to the facts of these cases. Fuller explication of a court's analysis under *Hosler* may obviate appeals such as this one, to the extent that this appeal concerns the propriety of the *Hosler* test.[2]

Because Cash in a Flash has failed to demonstrate how the *Husted* test is more comprehensive or accurate in assessing the fairness of a discriminatory classification, this

---

2. If the bankruptcy court had more clearly and thoroughly explained its analysis under the fourth prong of the *Hosler* test, appellant Cash in a Flash may have realized that the *Hosler* test is no more comprehensive than the *Husted* test.

court finds that the bankruptcy court did not err by using the *Hosler* test to evaluate Debtors' Chapter 13 plans. Where Congress has given no guidance as to the meaning of the phrase "discriminate unfairly", the court finds that the four-pronged *Hosler* test was a reasonable means to ascertain whether Debtors' classification of creditors was unfairly discriminatory. The fact that most bankruptcy courts have used this test or something closely akin to it speaks well to the propriety of using the *Hosler* test. Although the United States Court of Appeals for the Sixth Circuit has not ruled on how 11 U.S.C. § 1322(b)(1) should be interpreted, the court has found nothing in this circuit's existing bankruptcy case law which would be contrary to this holding.

### B. UNFAIR DISCRIMINATION

■ Under Chapter 13, a debtor may file a reorganization plan which creates separate classes of creditors as long as each claim within a class is "substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a) (1993). Chapter 13 also allows a debtor to modify his reorganization plan at any time before confirmation of the plan. 11 U.S.C. § 1323. A Chapter 13 debtor's plan is also subject to 11 U.S.C. § 1322(b)(1) which prohibits unfair discrimination against any class created under the plan. The debtor has the burden to prove that any proposed classification is not unfairly discriminatory. *See In re Groves*, 39 F.3d 212, 214 (8th Cir.1994); *In re Janssen*, 220 B.R. 639, 643 (Bankr.N.D.Iowa 1998). Most courts have recognized that the determination of whether a plan unfairly discriminates against creditors is a fact-specific inquiry and must be made on a case-by-case basis. *See, e.g., In re Ford*, 221 B.R. 749, 755 (Bankr. 1998); *In re Kovich* at 407; *In re Delauder*, 189 B.R. 639, 644 (Bankr.E.D.Va.1995). As mentioned above, the preferred legal test used by courts to assess the fairness of a debtor's classification of creditors is the four-

part test originally articulated in *In re Kovich* and referred to in the present case as the *Hosler* test.[3] Under this test, the court will assess the fairness of Debtors' reorganization plans by examining:

1) whether the discrimination has a reasonable basis;

2) whether the debtor can carry out a plan without such discrimination;

3) whether such discrimination is proposed in good faith; and

4) the treatment of the class discriminated against.

*Hosler* at 396.

1. Reasonable Basis

■ The most common reason accepted by courts as a basis for allowing separate classification of creditors' claims is that such classification will aid the debtor's rehabilitation. *In re Delauder* at 645. In the case at bar, Cash in a Flash contends that preserving a relationship with its deferred presentment services business will assist Debtors' rehabilitation.[4] In support of this contention, Cash in a Flash notes that confirmation of Chapter 13 bankruptcy plan severely damages a consumer's credit rating and avers that it provides funds to those with poor credit ratings. Consequently, Cash in a Flash argues that Debtors' future access to additional cash may depend upon their ability to maintain a good relationship with Cash in a Flash. Cash in a Flash contends that these concerns provide a reasonable basis for Debtors' favorable treatment of its claim.

The court finds this rationale to be an inadequate justification for the discriminatory treatment in question. While it might be true that Debtors will continue to need access to additional funds from deferred presentment services or other financial companies, Cash in a Flash fails to show why that interest would be threatened by treating it in the same manner that Debtors' plans treat the other creditors that provided cash to

---

3. Some courts have employed a slight variation of the four-part *Hosler* test by defining the fourth factor as whether "the degree of discrimination is directly related to the basis or rationale for the discrimination." *See, e.g., In re Janssen* at 644.

4. In its brief, Cash in a Flash asserted this argument under the second prong of the *Husted* test. The court finds that this rationale is more appropriately analyzed under the first prong of the *Hosler* test.

Debtors within 120 days of their bankruptcy petitions.[5] Cash in a Flash does not aver that it would not offer its services to Debtors if it only received a pro rata share of its claims. Moreover, Cash in a Flash seems to assume that Debtors' financial future depends solely upon their access to the services provided by Cash in a Flash. That assumption would be warranted only if Cash in a Flash were the only commercial entity providing cash to consumers with poor credit ratings. Neither Cash in a Flash nor Debtors have offered any evidence that the other creditors, who provided Debtors with cash in the 120-day period preceding their bankruptcy petitions, do not extend cash to consumers with poor credit ratings. If any of those creditors do extend cash to individuals considered to be poor credit risks, there would be no basis to single out Cash in a Flash for favorable treatment.

■ Cash in a Flash also contends that Debtors' "bad faith" conduct provides ample justification for creating a special class of creditors for its claim. With respect to Chandler, Cash in a Flash cites his failure to appear at trial, his failure to list other bankruptcy filings in his petition, and his receipt of cash advances from its deferred presentment service and four other creditors within days of filing bankruptcy as evidence of Chandler's bad faith. With respect to Brown, Cash in a Flash similarly argues that separate classification of its claim was justified by her failure to appear at trial and her receipt of cash advances from its deferred presentment service and three other creditors within days of filing bankruptcy.

This rationale is insufficient to prove that Debtors' reorganization plans were submitted in bad faith. The court agrees with the bankruptcy court that the mere proximity between the Debtors' receipt of cash advances and their subsequent filing of bankruptcy petitions does not, without more, rise to the level of misconduct necessary to justify a separate classification based upon Debtors'

bad faith. As the bankruptcy court noted, Cash in a Flash is in the business of providing the equivalent of short-term loans to individuals suffering from severe financial difficulties. The very nature of the transaction involved in providing deferred presentment services should have put Cash in a Flash on notice of Debtors' financial status. Under a deferred presentment service agreement, the creditor agrees not to cash or deposit the check issued to it for a period of time precisely because the issuer of the check needs cash immediately and does not have sufficient funds to allow the issuer's bank to honor the check. If one of Cash in a Flash's customers files a bankruptcy petition, it will occur within a relatively short time of the cash advance. Accordingly, the court cannot assume that a simple failure to pay a debt or the filing of a bankruptcy petition within 90 or 120 days of receiving cash advances from Cash in a Flash and comparable creditors constitutes evidence of fraud, deception or any other misconduct which could be properly characterized as bad faith. There is no indication from the record that Debtors used these services with no intention of repaying their obligations.

Moreover, even if the court were to assume that the proximity between the cash advances and the filing of bankruptcy were indicative of bad faith, Cash in a Flash has not articulated any reason why its claims should be favored while those of the other financial companies or deferred presentment companies which provided Debtors with cash in the same time period are not favored. By its own admission, Cash in a Flash has shown that other financial companies and deferred presentment providers were equally victimized by Debtors' alleged "bad faith" conduct. If Debtors' conduct provides a reasonable basis for favorable treatment of Cash in a Flash, the court can see no reason why that same conduct would not provide a reasonable basis for favorable treatment of the other

---

5. Cash in a Flash avers that Debtor Brown obtained cash advances from the following finance companies and/or deferred payment service providers within 90 to 120 days prior to her bankruptcy petition: EZ Cash 1, LLC, Cash, Inc., and Advanta. Cash in a Flash alleges that Debtor Chandler obtained cash advances from the following finance companies and/or deferred payment service providers within 90 to 120 days prior to his bankruptcy petition: Check Into Cash, Fast Cash, U.S.A. Cash, and Quick Cash.

creditors who suffered the same alleged abuse of their services.

■ Cash in a Flash has failed to show that the discriminatory treatment will aid Debtors' rehabilitation or that Debtors' prepetition or post-petition conduct constituted bad faith.[6] Accordingly, the court finds that Cash in a Flash has failed to offer a reasonable basis to justify Debtors' discriminatory treatment of their disfavored creditors.

### 2. Need for the Classification

■ Cash in a Flash contends that the need for judicial expediency and Debtors' legitimate concerns about maintaining a relationship with it should satisfy the requirements of the second prong of the *Hosler* test. The court notes that there is some overlap between the first and second prongs of the *Hosler* test. Accordingly, the court will not address again Cash in a Flash's argument concerning Debtors' interest in preserving their relationship with it. However, the court will briefly address Cash in a Flash's argument concerning judicial expediency.

Although the court recognizes the importance of legal settlements in the "just, speedy and inexpensive determination of every action," Fed.R.Civ.Proc. 1, it is axiomatic that expediency should never outweigh the substantive protections of a federal statute. In the case at bar, Debtors have discriminated against some of its unsecured creditors by creating a special classification for Cash in a Flash. Under 11 U.S.C. § 1322(b)(1), Debtors cannot unfairly discriminate against any creditor in creating classifications under their reorganization plans. The question of unfair discrimination under 11 U.S.C. § 1322(b)(1) will always arise after a debtor and favored creditor have reached a settlement agreement. The fact that Debtors and Cash in a Flash have reached settlement agreements sheds little light on the question of whether Debtors have unfairly discriminated against

their other unsecured creditors. Accordingly, the court finds that Cash in a Flash has failed to show that the discriminatory treatment is necessary for Debtors to carry out their Chapter 13 reorganization plans.

### 3. Good Faith

From the bankruptcy court's memorandum opinion, it is not clear whether the court's discussion of good faith refers to the third prong of the *Hosler* test or to the reasons offered by Cash in a Flash to justify Debtors' favorable treatment of its claims. Although Cash in a Flash does contend that Debtors' actions in filing bankruptcy petitions so close in time to the receipt of several cash advances constituted bad faith, Cash in a Flash does not contest Debtors' good faith in proposing the discriminatory treatment of their unsecured creditors. Quite to the contrary, Cash in a Flash argues that Debtors' special classification of its claim was proposed in good faith.

■ Irrespective of whether any party questions Debtors' good faith in proposing modifications of their Chapter 13 plans, the court has an independent duty to evaluate all factors relevant to a fairness determination. *In re Riggel*, 142 B.R. 199, 202 (Bankr. S.D.Ohio 1992). In determining whether a debtor's plan has been proposed in good faith, courts have looked to the fundamental fairness of the proposal, *In re Chapman* at 416, the disparity in treatment of creditors, *In re Kolbe* at 574, and the debtor's motivation for proposing the classification, *In re Delauder* at 645. Where the underlying objective of the *Hosler* test is to determine the fairness of a classification, defining a debtor's good faith in terms of its fundamental fairness is the height of circular reasoning. Moreover, defining good faith in terms of the disparity in treatment among a debtor's creditors is redundant where such disparities should be addressed under the fourth prong of the *Hosler* test. Thus, the good faith

---

**6.** The court agrees with the bankruptcy court that Chandler's failure to list his previous bankruptcies in his proposed plan, though inappropriate and not condoned by this court, does not rise to the level of bad faith conduct sufficient to justify the discriminatory treatment in Chandler's reorganization plan. The court also does not view Debtors' failure to appear at the scheduled hearing as sufficient evidence of bad faith to justify the special preference given to Cash in a Flash. Moreover, the court notes that Chandler's failure to list his previous bankruptcies and Debtors' failure to appear at the hearings would provide just as much basis to grant favorable treatment to the other finance and deferred presentment companies as to Cash in a Flash.

inquiry in the present case should be narrowed to the question of the debtor's motivation.

 A debtor's proposed classification is not offered in good faith when the debtor's goal is to avoid the trustee's commission on distributions. *First Bank & Trust v. Gross (In re Reid)*, 179 B.R. 504, 508 (E.D.Tex. 1995); *In re Genereux*, 137 B.R. 411, 413 (Bankr.W.D.Wash.1992). In the case at bar, there is no evidence that Debtors' proposed classification was an attempt to avoid paying the trustee's commission. To the contrary, the trustee actually participated in modifying Debtors' reorganization plans to reflect the new classification.

### 4. Treatment of the Class

Under Debtor Brown's modified plan, a claim on behalf of Cash in a Flash in the amount of $445.00 has been elevated to Class I, unsecured status. This status guarantees Cash in a Flash that its claim will be paid in full before general unsecured creditors receive any distribution. Moreover, under the modified plan, Cash in a Flash's claim will be repaid 100% at a rate of $10 dollars per month while the other unsecured creditors will only receive 12% of their claims over a period of sixty months.

 Where Brown and Cash in a Flash have failed to offer any reasonable basis for this discrimination, the court deems the disparity in Brown's treatment of Cash in a Flash and its other unsecured creditors to be unfairly discriminatory. One of the hallmarks of unfair discrimination is deferred distribution on one class of claims until after the completion of payments to another class of claims. *In re Kovich* at 406. The elevation of Cash in a Flash's claim to Class I status certainly creates an occasion of deferred distribution because that status alone guarantees that the claim will be paid before any distribution on those claims not possessing Class I status. Moreover, the disparity between 100%, the percentage of repayment for Cash in a Flash's claim of $445.00, and 12%, the percentage of repayment for the other unsecured creditors, is so large as to strongly suggest inequity and unfairness. A 12% payment over the course of sixty months does not appear to be a meaningful payment,

especially when it is compared to the 100% payment Cash in a Flash will receive on its claim of $445.00. Although the proposed classification does not automatically result in lower payments to the disfavored creditors, their claims will not be paid until Cash in a Flash's claim of $445.00 is paid in full. Where there are no compelling policy reasons to justify the disparity in payment priority and repayment percentages, this court finds the discrimination to be unfair and in violation of 11 U.S.C. 1322(b)(1).

 Under Debtor Chandler's modified plan, the repayment rate of Cash in a Flash's claim in the amount of $238.00 has been increased to $10.00 per month. This increase accelerates repayment of Cash in a Flash's claim to twenty-four months. Chandler's remaining unsecured creditors are scheduled to receive 100% of their claims over approximately sixty months. There is no indication that Cash in a Flash's claim was elevated to Class I status.

There is not a gross disparity in the plan's treatment of Cash in the Flash and that of the other unsecured creditors. As Cash in a Flash notes; the unsecured creditors will not receive any less in payments if the proposed classification is approved. Moreover, the claims of the unsecured creditors are still scheduled to be paid in full. The only difference resulting from the proposed classification is the aggregate time of repayment. Whereas the unsecured creditors will receive their allotted payments over the course of sixty months, Cash in a Flash will have its claim of $238.00 repaid in twenty-four months at a rate of $10.00 per month. While the plan proposed only minimal difference in treatment, neither Chandler nor Cash in a Flash offered any justification for this classification other than personal preference. Where no reasonable basis for the classification has been offered, even this slight difference in treatment must be deemed unfair.

## IV. CONCLUSION

Although Debtors' proposed special classifications of Cash in a Flash's claims were offered in good faith, they have not fulfilled their burden of showing that the discriminatory treatment was not unfair. Of all the reasons offered by Cash in a Flash to justify the favorable treatment of its claims, none

provided a reasonable basis to prefer Cash in a Flash over any of the other finance companies or deferred presentment providers who gave cash advances to Debtors within 90 to 120 days of their bankruptcy petitions. As the *Hosler* court stated, "lawful classification of claims in a Chapter 13 setting involves more than just the personal preference of a debtor it involves a justification by the debtor based on reason and fairness." *Hosler* at 396. Debtors in the case at bar have failed to satisfy that threshold. Accordingly, this court must conclude that the favorable treatment of Cash in Flash can only be attributed to Debtors' personal preferences. Such naked preferences violate the letter and the spirit of 11 U.S.C. § 1322(b)(1) and cannot be approved by the court.

## V. ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on this day in this cause, the bankruptcy court's judgment in favor of Debtors/Appellees is **AFFIRMED.**

**IT IS SO ORDERED.**